IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00355-CV

 

In the
Interest of V.R.J., R.L.H., and H.J., Children

 

 

 



From the 74th District Court

McLennan County, Texas

Trial Court No. 2004-965-3

 



MEMORANDUM  Opinion










 

      Appellant, V. J.‑A., appeals
the termination of the parent-child relationship between her and her three
daughters, V. R. J., R. L. H., and H. J.  We affirm.  

      1.   Effective Assistance of Counsel.

      In V. J.‑A.’s first issue, she
contends that she did not receive the effective assistance of counsel at
trial.  In particular, she complains that trial counsel did not object to the
trial court’s broad-form submission of the jury charge:

This court has held that, for subsections ‘D’
and ‘E’ (and, for the same reasons, impliedly others such as ‘O’ in the present
case) of the grounds for termination of parental rights found in section
161.001 of the Family Code, due process requires that a jury charge in a
termination case requires jurors (at least ten) to separately find each of the
statutory grounds, rather than lumping the grounds together and asking jurors
if they find that any of the grounds are true.  In the Interest of B.L.D.
and B.R.D., 56 S.W.3d 203 (Tex. App.—Waco 2001), rev’d on other grounds,
113 S.W.3d 340 (Tex. 2003).  Here, that was not done.

(Br. at 15-16); see Tex. Fam. Code Ann.
§ 161.001(1)(D)-(E) (Vernon Supp. 2005); Act of May 24, 2001, 77th Leg.,
R.S., ch. 809, § 1, sec. 161.001(1)(O), 2001 Tex. Gen. Laws 1589, 1591
(amended 2005) (current version at Tex.
Fam. Code Ann. § 161.001(1)(O) (Vernon Supp. 2005)); Tex. R. Civ. P. 277.    

      “To successfully assert an ineffective
assistance of counsel claim, a defendant in a parental termination case must
show that his or her counsel’s performance was deficient and that this
deficiency prejudiced the defense.”  In re J.P.B., 180 S.W.3d 570, 574 (Tex. 2005); accord In re M.S., 115 S.W.3d 534, 544-545 (Tex. 2003); see
Strickland v. Washington, 466 U.S. 668 (1984).  “An allegation of
ineffective assistance must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness.”[1]  In re K.K., No. 10-04-00303-CV, 2006 Tex. App. LEXIS 1819 (Tex. App.—Waco Mar. 8, 2006, no pet.) (mem. op.) (quoting In
re S.R.C., No. 2-02-426-CV, 2003 Tex. App. LEXIS 10624, at *8 (Tex.
App.—Fort Worth Dec. 18, 2003, no pet.) (mem. op.)); see J.P.B. at
574-75.  “It is only when ‘the conduct was so outrageous that no competent
attorney would have engaged in it,’ that the challenged conduct will constitute
ineffective assistance.”  M.S. at 545 (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).

      Conclusion. 
V. J.‑A. does not point in the record to trial counsel’s
reasons for deciding not to object to the broad-form charge.  Thus, V. J.‑A.
does not establish that trial counsel failed to render effective assistance.[2]  Accordingly, we overrule V. J.‑A.’s
first issue.

      2.   Factual
Sufficiency of the Evidence.

      In V. J.‑A.’s second issue, she
contends that the evidence that termination was in the best interest of the
children was factually insufficient.

      “The court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence
. . . that termination is in the best interest of the child.”  Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2005).  “‘Clear and convincing evidence’ means the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established.”  Id. § 101.007 (Vernon 2002).  

      “In a factual sufficiency review,
. . . a court of appeals must give due consideration to evidence that
the factfinder could reasonably have found to be clear and convincing.”  J.F.C.,
96 S.W.3d at 266; accord In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).  “[T]he inquiry must be ‘whether the evidence is such that a factfinder could
reasonably form a firm belief or conviction about the truth of the State’s
allegations.’”  J.F.C. at 266 (quoting C.H. at 25); see Sw.
Bell Tel. Co. v. Garza, 164 S.W.3d 607, 622 (Tex. 2004).

A court of appeals should consider whether
disputed evidence is such that a reasonable factfinder could not have resolved
that disputed evidence in favor of its finding.  If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.

J.F.C. at
266.

      V. J.‑A. states the evidence in
terms of the factors set out in Holley v. Adams.[3]  See Holley v. Adams, 544 S.W.2d 367 (Tex. 1976).

An extended number of factors have
been considered by the courts in ascertaining the best interest of the child. 
Included among these are the following:

(A) the
desires of the child; 

(B)  the
emotional and physical needs of the child now and in the future; 

(C) the
emotional and physical danger to the child now and in the future; 

(D) the
parental abilities of the individuals seeking custody; 

(E)  the
programs available to assist these individuals to promote the best interest of
the child; 

(F)  the
plans for the child by these individuals or by the agency seeking custody; 

(G) the
stability of the home or proposed placement; 

(H) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and 

(I)   any
excuse for the acts or omissions of the parent.

      This listing is by no means exhaustive,
but does indicate a number of considerations which either have been or would
appear to be pertinent.

Holley
at 371-72 (internal citations omitted) (factors set out in list form); see
C.H., 89 S.W.3d at 27.  “[S]ome of the listed factors may be inapplicable
to some cases, while other factors not listed may also be considered when appropriate.” 
In re S.A.P., 169 S.W.3d 685, 707 (Tex. App.—Waco 2005, no pet.); see
C.H. at 27.

      “The trier of fact has several
alternatives available when presented with conflicting evidence.  It may
believe one witness and disbelieve others.  It may resolve inconsistencies in
the testimony of any witness.  It may accept lay testimony over that of
experts.”  McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986) (internal citations omitted); see J.P.B., 180 S.W.2d at 574; B.L.D.,
113 S.W.3d at 348.  

      “[E]vidence that a parent has engaged in
abusive or neglectful conduct in the past permits an inference that the parent
will continue this behavior in the future.”  In re T.L.S., 170 S.W.3d
164, 166 (Tex. App.—Waco 2005, no pet.) (protective order); accord In re
D.L.N., 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied); Ray v.
Burns, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) (child custody)
(“Past is often prologue.”).  

      We consider the evidence that the jury
could reasonably have found to be clear and convincing.  See J.F.C., 96
S.W.3d at 266; C.H., 89 S.W.3d at 25.

      A.   The Desires of the
child

      V. J.‑A. argues that the
children were too young to know or express their desires.  Appellee, the
Department of Family and Protective Services (“Department”), argues that the
children love both V. J.‑A. and their foster parents.  The children
were eight years, six years, and less than two years of age, respectively, at
the time of trial.  R. L. H. and V. R. J. feared to return
to the apartment complex where V. J.‑A. planned to live, because the
apartment ceiling there had fallen in on them and because they had seen people
with guns at a bank robbery across the street.

      B.   The Emotional and
physical needs of the children now and in the future

      V. J.‑A. concedes that the
children will need counseling in the future, but argues that she saw to the
children’s physical needs in the past, and intends to see to it that their
needs are met in the future.  The Department argues that V. J.‑A.
gives no reason to believe that the future would be any different from the
past.  The children have grave problems, both emotional and physical.  A
psychologist who has treated V. R. J. and R. L. H.
testified that they are “two of the most disturbed children” with whom he
deals.  V. R. J. threw tantrums and made disruptive outbursts at
school.  When she came into foster care, she regularly had nightmares, and
often threatened violence.  When R. L. H. came into foster care, she
was very easily frightened, and in particular feared being alone.  H. J.
has food allergies and asthma.  When the children came into foster care, they
had a severe lice infestation, and H. J. had a severe diaper rash and an
upper respiratory infection.  At a time when V. R. J. was eligible to
receive free school lunches, V. J.‑A. repeatedly failed to complete
the application for the program, and sent V. R. J. to school without
food or money to purchase food, so that the school principal sometimes paid for
V. R. J.’s lunch out of the principal’s own pocket.

      C.   The Emotional and
physical danger to the children now and in the future

      V. J.‑A. argues that the danger
to the children in the past came from her husbands and other men in her life,
but that through counseling she has come to learn how to identify and avoid
abusive men.  The Department argues that V. J.‑A. has failed to
protect the children from abusive men in the past, and that there is no reason
to believe that she would do so in the future.  A year after V. J.‑A.
met T. F., the father of V. R. J., he was convicted of a felony,
and his community supervision was revoked, in part for the sexual assault of
V. J.‑A.  See Tex.
Penal Code Ann. § 22.011(a) (Vernon Supp. 2005).  V. J.‑A.
had physical fights with her first husband, T. H., the father of
R. L. H.  When R. L. H. was two months old, T. H.
broke one of R. L. H.’s legs and some of her ribs.  V. J.‑A.
did not seek medical care for R. L. H. until two weeks later, when
V. J.‑A.’s mother saw the injuries.  After T. H. was convicted
of injuring R. L. H. and sentenced to imprisonment, T. F. was
released from prison and began living with V. J.‑A. again.  While
living with V. J.‑A., T. F. sexually assaulted a friend of
V. R. J., and, V. J.‑A. believed, sexually assaulted
V. R. J.  V. J.‑A. had physical fights with her next
husband, A. A., during one of which A. A. injured V. J.‑A.’s
niece.  When H. J. was three months old, her father, A. A., beat her,
causing bruises.  After the children were removed from V. J.‑A.’s
home, V. J.‑A. began a sexual relationship with and lived with
A. L., whom she knew to have criminal convictions for criminal trespass
and harassment of women, see Tex.
Penal Code Ann. §§ 30.05(a) (Vernon Supp. 2005), 42.07(a) (Vernon
2003), and V. J.‑A. attempted to conceal the relationship from the Department’s
investigators.  V. J.‑A. continues to visit T. F. in prison.  

      D.   The Parental
abilities of the individuals seeking custody

      V. J.‑A. argues that her
parenting abilities have improved through counseling.  The Department argues
that V. J.‑A.’s “parental abilities are wholly lacking” and that she
has not been able to improve; and that the foster parents are experienced,
able, and diligent parents.  The children’s foster parents take the children to
pediatricians, psychologists, and a psychiatrist.   The foster parents were
caring for nine foster children at the time of trial.  They had cared for over
fifteen foster children in the eight years before trial, and had adopted
several of those children.  When T. H. broke R. L. H.’s bones,
V. J.‑A. did not seek medical care for two weeks.  Nor had
H. J. received medical care for her allergies or asthma.  V. J.‑A.’s
anger-management therapist testified that V. J.‑A. was not capable
of accommodating the stresses involved in parenting.  

      E.   The
Programs available to assist the individuals seeking custody to promote the
best interest of the child

      V. J.‑A. argues that “there are
numerous counseling and support services, both public and private, available in
 McLennan County to single working parents.”  (Br. at 25.)  The Department
argues that the foster parents “have shown . . . that they will seek
out and use every available program to improve life for the[] girls and to
promote their best interest.”  (Br. at 33.)  The Department points to evidence
of counseling programs in which the trial court ordered V. J.‑A. to
participate, but which she failed to take advantage of, such as
anger-management counseling; and to evidence of a school-lunch assistance
program for which V. J.‑A. long failed to apply, parent-teacher
conferences in which she failed to participate, and educational opportunities
of which she failed to take advantage.  V. J.‑A. repeatedly failed
to participate in scheduled conferences with V. R. J.’s teacher. 
V. J.‑A. took advantage of school financial assistance, in that she
repeatedly enrolled in school, accepted aid funds, and then withdrew from all
classes, without returning the funds.  V. J.‑A. enrolled in
parenting classes and group counseling, but rarely attended, and did not
complete them.  

            F.   The Plans for the children by
the individuals or by the agency seeking custody

      V. J.‑A. argues that the
children, if adopted by their foster parents, who already care for several
other children, would not receive as much time or affection as the children
would from their mother.   The children’s foster parents intend to adopt them.

            G.   The Stability of the home or
proposed placement

      V. J.‑A. concedes that she
“moved from time to time”; she argues that she “always provided a home and
sufficient income,” and that no “harm to the children came as result of their
lack of food, clothing, or shelter.”  (Br. at 25.)  V. J.‑A. moved
at least eight times in less than eighteen months immediately before trial. 
The three children had different fathers, and V. J.‑A. lived with at
least four men during the children’s lifetimes.  V. R. J. often
appeared at school hungry and unkempt.

            H.   The Acts or omissions of the parent which may
indicate that the existing parent-child relationship is not a proper one

 

      V. J.‑A. argues that she “was
never accused of harming any of the children,” and that “[w]hen the two men she
was with harmed a child, she immediately sought medical attention for the child
and ended her relationship with the man.”  (Br. at 25.)  As noted above, when
T. H. injured R. L. H., V. J.‑A. delayed seeking
medical treatment for two weeks, until V. J.‑A.’s mother saw that
the child was ill.  V. J.‑A. sometimes went to dance clubs and left
the children in a car parked outside.  V. J.‑A. and her husband
sometimes had sexual intercourse in front of the children.  After T. H.
abused R. L. H., when the children misbehaved, V. J.‑A.
sometimes threatened to take the children to his house.  V. J.‑A.
put R. L. H. in a closet with her mouth taped shut.  A therapist who
counseled V. J.‑A. testified that V. J.‑A. required three
to six months of progress before the children might be returned to her, and
that V. J.‑A. had made at most two months of halting progress.  

            I.    Any excuse for the acts or
omissions of the parent

      V. J.‑A. argues that she should
not be held responsible for the injuries that her husbands caused to the
children, since she could not reasonably have known that they would be
abusive.  The Department argues that V. J.‑A. thus “offers no excuse
for her failure to protect the children.”  (Br. at 33.)  As stated above,
V. J.‑A. repeatedly and knowingly maintained relationships with
abusive men. 

      Conclusion. 
Given this evidence, the jury could reasonably have formed a firm
belief or conviction that the Department’s allegation that termination of the
parent-child relationship was in the children’s best interest was true.  See
J.F.C., 96 S.W.3d at 266; C.H., 89 S.W.3d at 25.   Thus, the
evidence that termination of the parent-child relationship was in the best
interest of the children was factually sufficient.  Accordingly, we overrule
V. J.‑A.’s second issue.




      CONCLUSION. 
Having overruled V. J.‑A.’s issues, we affirm.

 

TOM GRAY

Chief Justice

 

Before Chief Justice Gray,

      Justice Vance, and

      Justice
Reyna

Affirmed

Opinion
delivered and filed July 26, 2006

[CV06]









[1]  We have held that in
appeals of the termination of the parent-child relationship it is sometimes
appropriate to “abate th[e] appeal and remand the cause to the trial court for
a hearing at which [a]ppellants can have a meaningful opportunity to develop an
evidentiary record to support their ineffective assistance of counsel claims.” 
In re K.K., 180 S.W.3d 681, 683 (Tex. App.—Waco 2005, abatement order), disp.
on merits, No. 10-04-00303-CV, 2006 Tex. App. LEXIS 1819 (Tex. App.—Waco Mar. 8, 2006, no pet.) (mem. op.); see In re T.N.F., No. 10-05-00327-CV, 2006
Tex. App. LEXIS 2229, at *3-*5 (Tex. App.—Waco Mar. 22, 2006, abatement
order).  “Whether abatement is appropriate will depend on the facts of each
termination case and the specific allegation of ineffective assistance.”  K.K.,
180 S.W.3d at 688.  

V. J.‑A.
acknowledges this record requirement, but argues against abatement.  She
argues:

At the hearing
[on the motion for new trial], appellate counsel complained, inter alia,
about trial counsel’s failure to request a B.L.D. charge.  20 RR 5-6. 
Thus [V. J.‑A.] met her obligations regarding a record on this
issue.  But the State [sic] did not call trial counsel or put on any other
evidence about trial counsel’s reasons.  Thus the State [sic] has forfeited its
defense that trial counsel had an acceptable reason that meets the Strickland
test, and this appellate court should presume that there was not an
acceptable reason.

(Br. at 17); see B.L.D., 56
S.W.3d 203; Strickland, 466 U.S. 668.  V. J.‑A. cites no
authority for those propositions.  To the contrary, the “[a]ppellant has the
burden to rebut th[e] presumption [of effective assistance] by presenting
evidence illustrating why trial counsel did what he did.”  T.N.F., 2006
Tex. App. LEXIS 2229, at *4 n.4 (quoting In re A.J.H., No.
14-03-01016-CV, 2004 Tex. App. LEXIS 1969, at *21 (Tex. App.—Houston [14th
Dist.] Mar. 2, 2004, no pet.) (mem. op.)); K.K., 180 S.W.3d at 685 n.3
(quoting A.J.H. at *21).

        V. J.‑A. had a
meaningful opportunity to develop a record to support her
ineffective-assistance issue.  At the hearing on V. J.‑A.’s motion
for new trial, counsel stated: “I set the hearing, because I believe the
statute contemplates that we’re going to have a hearing.  I do not have any
evidence.”  (20 R.R. at 4); see Tex.
Fam. Code Ann. § 263.405(d) (Vernon Supp. 2005).  Accordingly, it
is not appropriate to abate the case.

        





[2]  In
any case, the Texas Supreme Court has held that counsel does not fail to render
effective assistance in not objecting to a broad-form charge in a termination
suit.  “In light of th[e Texas Supreme] Court’s decision in Texas Department
of Human Services v. E.B., which specifically approved broad-form
submission in a termination case, it cannot be said that counsel’s failure to
object” to such a charge “[i]s, ‘in light of all the circumstances,
. . . outside the wide range of professionally competent
assistance.’”  In re J.F.C., 96 S.W.3d 256, 283 (Tex. 2002) (citing Tex.
Dep’t of Human Servs. v. E.B., 802 S.W.2d 647 (Tex. 1990)) (quoting Strickland,
466 U.S. at 690) (ellipsis in J.F.C.).  “While it would certainly
have been within the bounds of professional competency to raise an issue in the
trial court so that counsel could ultimately implore th[e Supreme] Court to
reconsider E.B., it is not outside the bounds of competence to follow a
decision of th[e Supreme] Court.”  J.F.C. at 283.  “[C]ounsel’s
performance will be measured against the state of the law in effect during the
time of trial and [courts] will not find counsel ineffective where the claimed
error is based upon unsettled law.”  Ex parte Chandler, 182 S.W.3d 350,
359 (Tex. Crim. App. 2005) (quoting Ex parte Welch, 981 S.W.2d 183, 184
(Tex. Crim. App. 1998)); see Chandler id. n.38.





[3]  V. J.‑A.
also cursorily summarizes evidence in terms of the factors stated in Texas
Family Code Section 263.307.  (See Br. nn. 2-3); Tex. Fam. Code Ann. § 263.307 (Vernon 2002).  V. J.‑A.
points out that we have considered those factors in review of a bench trial.  See
In re A.M.W., No. 10-05-00123-CV, 2006 Tex. App. LEXIS 1504, at *1, *16
n.3, *27 (Tex. App.—Waco Feb. 22, 2006, no pet.) (mem. op.).  Those factors
“should be considered by the [trial] court . . . in determining
whether the child’s parents are willing and able to provide the child with a
safe environment” in permanency hearings before the court.  Tex. Fam. Code Ann. § 263.307(b); see
id. § 263.306(a)(4) (Vernon 2002).  As V. J.‑A. concedes,
the trial court did not expressly instruct the jury on those factors.  “[I]t is
the court’s charge, not some other unidentified law, that measures the
sufficiency of the evidence when the opposing party fails to object to the
charge.”  Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000); accord
Sw. Bell Tel. Co., 164 S.W.3d at 619 & n.16.  V. J.‑A.
did not object to the charge.  In any case, in short, V. J.‑A.’s
argument does not comport with the evidence, and those factors do not favor
V. J.‑A.  For example, V. J.‑A. contends that there is
“no evidence” of “whether the child has been the victim of repeated harm after
the initial report and intervention by the department,” “whether the child is
fearful of living in or returning to the child’s home,” “whether there is a
history of abusive or assaultive conduct by the child’s family,” “whether there
is a history of substance abuse by the child’s family,” or “whether the child’s
family demonstrates adequate parenting skills, including providing the child
. . . with . . . minimally adequate health and nutritional care.” 
(Br. at 26-28 n.12); Tex. Fam. Code Ann.
§ 263.307(b)(4)-(5), (7)-(8), (12).  For the reasons stated below,
V. J.‑A.’s summaries do not comport with the evidence.  (See
infra pp. 5-10.)  Of those factors, the one that most favors V. J.‑A.
is perhaps “the child’s age and physical and mental vulnerabilities.”  See
Tex. Fam. Code Ann.
§ 263.307(b)(1).