Sandra Whitehead RAY, Appellant,

v.

Sally Beth BURNS, et al., Appellees.

No. 10–91–067–CV.

Court of Appeals of Texas,
Waco.

June 17, 1992.

David B. Wagner, W. Tyler Moore, Jr., P.C., Bryan, for appellant.

Roger Knight, Jr., Madisonville, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

Michael Ray, who was two years and ten months old at the time of trial, is the son of Kenneth and Sandra Ray. Kenneth was killed in 1988. Sally Burns, Michael's paternal grandmother, originally filed this suit in 1989 against Sandra, seeking appointment as Michael's managing conservator and termination of Sandra's parental rights. Dr. W.A. Bilsing and his wife, Shirley, then joined Burns in an amended petition, seeking joint managing conservatorship and termination of parental rights. The Bilsings, whom Burns works for, are not related to Michael but assisted Burns in caring for him until he was almost one year old. Michael lived in the Bilsings' home during most of that time. Following a bench trial, the court appointed Burns and the Bilsings joint managing conservators, Sandra possessory conservator, and denied termination of the parent-child relationship.

Issues on appeal involve standing to bring the suit, the failure to appoint a guardian ad litem, the terms of the judgment, and the sufficiency of the evidence. We affirm.

## STANDING

■ Sandra's first point attacks the judgment on the ground that Burns and the Bilsings lacked standing under section 11.03 of the Family Code to bring the suit. *See* TEX.FAM.CODE ANN. § 11.03 (Vernon 1986 and Vernon Supp.1992). Burns and the Bilsings claim that Sandra waived any complaint about their standing by not presenting the issue to the trial court. *See* TEX.R.APP.P. 52(a).

Sandra never raised any question in the trial court about the Bilsings' standing, but she specially excepted to Burns' pleading on that ground. However, no adverse ruling on the exception appears in the record. In fact, Sandra alleges in a later pleading that her exceptions were granted. She waived any complaint regarding standing by failing to raise the issue of the Bilsings' standing in the trial court and by failing to obtain an adverse ruling on a motion, objection, or request presenting the issue of Burns' standing. *See id.* Point one is overruled.

## SUFFICIENCY OF THE EVIDENCE

### *APPOINTMENT OF A NONPARENT*

The court entered these pertinent findings:

- Sandra is thirty-five years old and has been married four times.
- Sandra had one child die from "crib death" and lost custody of another child to her ex-husband. She does not visit the child, who lives in the Philippines.
- Sandra had two children out of wedlock, one of whom her parents adopted and another who lives with Sandra and her live-in boyfriend, Jerry Orme.
- Sandra and Orme, who have no plans to marry, live in a two-bedroom, one-bath frame home.
- Dr. Cecil Reynolds, a psychologist, examined Michael and found that he probably suffers from an attention deficit hyperactivity disorder (commonly referred to as ADHD), that the disorder could be biologically or environmentally produced, and that Michael should be removed from his medication to determine whether the cause is biological or environmental and to try to treat the disorder with consistent care, love, and attention.
- Dr. Reynolds believed that Sandra's lifestyle and living conditions are not conducive to Michael's best interest and that it would be best to place him with Burns, his grandmother.
- Dr. Reynolds' opinion was that Michael's *emotional well-being and emotional development would be significantly impaired* and he would be *permanently emotionally damaged and impaired* if he were left in Sandra's custody and left in an emotionally unstable environment.
- Dr. Bilsing, a physician with a psychiatric residency, believed that Michael was suffering from ADHD and that the child would be *physically and emotionally disabled and impaired* if left in Sandra's custody.
- Tami Jones, whom the court appointed to make a home study and look into the circumstances of the parties, reported to the court her opinion that Michael's best interest would be served by appointing Burns and the Bilsings as joint managing conservators.

Based on these findings, the court reached this conclusion:

- Burns and the Bilsings conclusively established that awarding custody to Sandra would not be in Michael's best interest because it would significantly impair his physical and emotional well-being.

Relying on the holding in *Lewelling v. Lewelling*, 796 S.W.2d 164 (Tex.1990), Sandra argues in point two that the evidence is insufficient to support a finding or ultimate conclusion that her appointment would not be in Michael's best interest because it would significantly impair his physical health or emotional development. Again, Burns and the Bilsings initially rely on waiver to defeat the complaint. Sandra preserved the complaint for our review by questioning the sufficiency of the evidence in her motion for a new trial. *See* Tex. R.App.P. 52(a).

If a nonparent and a parent are both seeking managing conservatorship, section 14.01 of the Family Code prohibits the court from appointing the nonparent, unless it finds that appointing the parent "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." Tex.Fam.Code Ann. § 14.01(b)(1) (Vernon Supp.1992). This creates a strong presumption in favor of parental custody and, correspondingly, places a heavy burden on a nonparent. *Lewelling*, 796 S.W.2d at 167.

We review the evidence's sufficiency against these benchmarks in *Lewelling*, a suit in which grandparents were granted managing conservatorship in lieu of the child's parent:

- Evidence that the nonparent would be a better custodian is no longer adequate in itself to rebut the presumption in favor of the parent. *See id.*
- The nonparent must show specific acts or omissions of the parent that demonstrate that awarding custody to the parent would result in physical or emotional harm to the child. *See* id.
- Evidence that a parent has placed or allowed the child to remain in an unsta-

**434**

ble environment is the type of conduct that can significantly impair a child's physical or emotional development. *See id.* at 167 n. 4.

· "Close calls" go to the parent in an evidentiary review. *See id.* at 168.

Dr. Cecil Reynolds testified by deposition. Reynolds, a professor in Texas A & M's Department of Educational Psychology and a recognized expert in the diagnosis and evaluation of children's psychological disorders, said that Michael has the primary symptoms of ADHD, an incurable but treatable psychiatric disorder characterized by "developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." He could not definitely say, however, whether Michael suffers from ADHD or from an environmentally induced "age appropriate overactivity." From observing his playroom behavior, Reynolds believed that the ADHD—if that is what Michael has—is environmentally induced. A definite diagnosis is impossible, Reynolds stated, until Michael could be placed in a "consistent structured environment, where people could apply positive discipline with him, where they can avoid being entirely punitive, where they can structure his day, look after him on a minute-by-minute basis." The preferable environment, according to Reynolds, would be to place him with a consistent caregiver who did not have to work, not with someone who works daily and has to leave him in daycare with other children. Diagnosis and successful treatment will depend upon the type of care and attention, structure and rules that Michael receives in a stable home environment.

Sandra's unstable, disorganized, and chaotic lifestyle is amply shown by the evidence. She admitted living briefly with at least five different men and residing in ten different cities in three states during the three years before trial. She argues, however, that her home life had become more stable and consistent during the year and a half before trial, evidenced by her residing in the same town and holding a steady job for that period of time. She said that she is buying the house where she lives.

The court heard conflicting evidence on whether her lifestyle had really changed. Just a few months prior to trial, Sandra went to Arkansas with a former boyfriend and left Michael in the care of Jerry Orme—the man she was then living with—and Orme's mother. Orme said that their unmarried relationship had been stable only for about six months. Fairly recent events included Sandra's "calling the law" on Orme over a disagreement and Michael being placed in three daycare centers in a three-month period. Orme also admitted that Sandra had a bad temper and occasionally spanked Michael. In fact, the records of a professional counselor, who had been working on Sandra's parenting skills, indicated that she had been slapping and spanking Michael to control his behavior.

This is the type of environment, Reynolds noted, that contributes to and exacerbates Michael's hyperactive behavior and prevents a diagnosis of whether his problem is ADHD, a biological disorder that can only be managed by medication, or appropriate-age overactivity, which is environmentally induced and treatable without medication. Without diagnosis and treatment, Reynolds believed that Michael was a sure candidate for the Texas Youth Council and the Texas Department of Corrections.

Moreover, the evidence indicated that Burns and the Bilsings can give Michael the constant, consistent, non-punitive love, affection, discipline, and stable environment so critical to a diagnosis and treatment of his problem. The Bilsings do not work and Burns works only in the their home. Accordingly, all three of them are available to provide the stable home environment that Michael needs around the clock.

The Court in *Lewelling* expressly noted that placing or allowing a child to remain in an unstable environment is the type of conduct that can significantly impair emotional development. *Id.* at 167 n. 4. Although the legislature limited the court's discretion to appoint a nonparent as managing conservator, it did not eliminate it altogether. *Id.* at 168. Here, the court heard evidence of relatively recent acts on

Sandra's part that exacerbate Michael's hyperactivity and prevent a definitive diagnosis and treatment of his problem. Of necessity, Sandra must leave her son in daycare while she works. She contends, however, that the rules in *Lewelling* prohibit the court from considering her past lifestyle. *Lewelling* contains no such prohibition. Past is often prologue.

Reynolds' opinion was that to leave Michael in Sandra's custody would not be in his best interest because it would significantly impair his emotional well-being and emotional development. Dr. Bilsing shared that opinion. Considering the evidence as a whole, the court's finding and conclusion in that regard are supported by legally and factually sufficient evidence. Point two is overruled.

*APPOINTMENT OF JOINT MANAGING CONSERVATORS*

■ Section 14.021 of the Family Code provides for the appointment of joint managing conservators if the court finds it is in the child's best interest. TEX.FAM.CODE ANN. § 14.021(e), (j) (Vernon Supp.1992). Sandra's fifth point attacks the sufficiency of the evidence to support a finding that Michael's best interest required the appointment of joint managing conservators.

Some of the factors to be considered by the court in determining the child's best interest are whether: (1) the child's emotional needs and development will benefit from joint managing conservatorship; (2) the joint managing conservators are able to give first priority to the child's welfare and can reach shared decisions in the child's best interest; and (3) the joint managing conservators participated in the child's rearing before their appointment. *Id.* § 14.021(e)(1), (2), (4). The evidence reflected that, prior to their appointment, Burns and the Bilsings jointly cooperated and participated in caring for Michael until he was almost a year old; that while he was in their care they were able to reach shared decisions affecting his best interest and welfare, which are of paramount importance to them; and that Michael's emotional development would likely benefit from their joint appointment as managing

conservators. The evidence is legally and factually sufficient to support the appointment of Burns and the Bilsings as joint managing conservators, and the court did not abuse its discretion in doing so. *See Halamka v. Halamka*, 799 S.W.2d 351, 355 (Tex.App.—Texarkana 1990, no writ). Point five is overruled.

### FAILURE TO APPOINT A GUARDIAN AD LITEM

■ Section 11.10 of the Family Code provides: "In any suit in which termination of the parent-child relationship is *sought*, the court ... *shall* appoint a guardian ad litem to represent the interests of the child, ... unless the court ... finds that the interests of the child will be represented adequately by a party to the suit and are not adverse to that party." TEX.FAM.CODE ANN. § 11.10(a) (Vernon 1986) (emphasis added). Courts have interpreted this portion of section 11.10(a) as mandatory when termination of parental rights is sought. *E.g., Nichols v. Nichols*, 803 S.W.2d 484, 485 (Tex.App.—El Paso 1991, no writ); *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.—Austin 1983), *opinion after remand*, 685 S.W.2d 356; *Barfield v. White*, 647 S.W.2d 407, 408 (Tex.App.—Austin 1983, no writ); *Arnold v. Caillier*, 628 S.W.2d 468, 470 (Tex.App.—Beaumont 1981, no writ). In each of these cases, the court actually terminated parental rights without appointing a guardian ad litem or making the required alternate finding. Appointment of a guardian ad litem is not required, however, when termination of parental rights is not involved. *Lopez v. Lopez*, 723 S.W.2d 772, 773 (Tex.App.—El Paso 1986, no writ).

■ Burns and the Bilsings not only *sought* joint managing conservatorship but termination of Sandra's parental rights. They asked the court to appoint a guardian ad litem, but the court neglected to do so and also failed to find that a party adequately represented Michael's interest. Ultimately, however, the court awarded them managing conservatorship and refused to terminate parental rights. Sandra argues in her third point that she is entitled to a

reversal because the court failed to comply with section 11.10(a). The question thus presented is whether the court committed reversible error when it failed to appoint a guardian ad litem but never terminated parental rights.

Even if appointed, a guardian ad litem would have represented only Michael's interest, not Sandra's. *See Pleasant Hills Children's Home, Etc. v. Nida*, 596 S.W.2d 947, 951 (Tex.Civ.App.—Fort Worth 1980, no writ). Sandra does not contend that Michael was harmed by the failure to appoint a guardian ad litem. In fact, to conjure up harm under the circumstances, she would have to contend that he was harmed as a matter of law when the court refused to terminate her own parental rights. Moreover, the record does not reflect any harm to Michael from the court's neglecting to appoint a guardian ad litem.

A guardian ad litem, if the court had appointed one, would not have served as Michael's attorney but merely as an officer of the court, assisting the judge in protecting Michael's interest. *See Dawson v. Garcia*, 666 S.W.2d 254, 265 (Tex.App.—Dallas 1984, no writ). The court appointed Tami Jones to conduct a social study and psychological evaluation of all the parties, including Michael, and to report her findings, conclusions, and recommendations to the court. As the court noted in the order appointing Jones, the purpose of the study and evaluation was to aid the court in determining managing conservatorship. Among other things, the court instructed Jones to evaluate whether appointing Sandra as managing conservator would significantly impair Michael's physical health or emotional development. Jones, as an officer of the court, performed virtually the same duties as a guardian ad litem and served in the same capacity. Regardless of the title bestowed upon the officer of the court, the court nevertheless appointed a disinterested person to consider Michael's best interest and to assist the court in carrying out its duties. Jones' opinion—that Michael's best interest would be served by giving Burns and the Bilsings joint managing conservatorship in prefer-

ence to Sandra—is reflected in the court's ultimate conclusion and decision.

Section 11.10(a) requires the court to appoint a guardian ad litem or, under certain circumstances, make an alternate finding that a party adequately represents the child's interest when termination of parental rights is "sought." Tex.Fam.Code Ann. § 11.10(a) (Vernon 1986). Although Burns and the Bilsings obviously "sought" termination of Sandra's parental rights, the court neither appointed a guardian ad litem nor made an alternate finding. This was a procedural error of law. Clearly, if the court had terminated parental rights, the error would have been harmful and would have required a reversal. *See Nichols*, 803 S.W.2d at 485; *Turner*, 654 S.W.2d at 58; *Barfield*, 647 S.W.2d at 408; *Arnold*, 628 S.W.2d at 470. That is not the case here, however.

We cannot reverse and remand in a civil case because of an error of law unless the error was reasonably calculated to cause and probably did cause an improper judgment to be entered. *See* Tex.R.App.P. 81(b)(1). Thus, the crucial question: Did the failure to appoint a guardian ad litem probably result in an improper judgment?

Harm that would otherwise flow from an admitted error of law can be dissipated by the subsequent entry of a verdict or judgment. *See Spradling v. Williams*, 566 S.W.2d 561, 564 (Tex.1978). That is what happened when the court ultimately denied termination of parental rights. Moreover, a judgment should never be reversed for technical but harmless errors. *R. Lacy, Inc. v. Jarrett*, 214 S.W.2d 692, 694 (Tex.Civ.App.—Texarkana 1948, writ ref'd). Viewed from the record as a whole, the error—although harmful if parental rights were terminated—proved to be a technical violation of section 11.10(a). Finally, Tami Jones' appointment as an officer of the court, with responsibilities and duties virtually identical to those of a guardian ad litem, dissipated any harm.

We hold that the error is harmless and does not require a reversal. This holding is limited, however, to the facts presented: i.e., termination of parental rights is

sought but not granted; no guardian ad litem is appointed, but the court appoints a disinterested person to consider and protect the child's best interest and who performs a function virtually identical to that of a guardian ad litem; and the record does not reflect any harm to the child from the failure to appoint a guardian ad litem. No one should interpret our holding as precluding a finding of reversible error if a court should terminate parental rights without complying with section 11.10(a) but appoints an officer of the court to conduct a home or social study. Point three is overruled.

Another court of appeals has found reversible error when termination of parental rights was sought but not granted and the court failed to appoint a guardian ad litem or make an alternate finding. *Sisk v. Duck*, 593 S.W.2d 416, 417 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). One cannot tell from the opinion, however, whether the facts are identical to those here. For example, the opinion does not reflect whether the trial court appointed someone to conduct a social or psychological study to determine the child's best interest and to assist the court in determining custody, as was done here. In any event, we do not find *Sisk* controlling under the circumstances of this case.

## TERMS OF THE ORDER

█ In any suit affecting the parent-child relationship, a rebuttable presumption exists that the terms of a standard possession order, listed in section 14.033, provide the possessory conservator with the reasonable minimum possession and are in the child's best interest. Tex.Fam.Code Ann. § 14.033(k) (Vernon Supp.1992). A court may deviate from the terms of the standard order, if those terms would be unworkable or inappropriate and against the child's best interest, but it must include in the order the reasons for any deviation. *Id.* However, if the child is under three years of age, a court can enter either the standard order or an order "appropriate under the circumstances." *Id.* § 14.032(b).

Sandra contends in point four that the court failed to grant her the standard terms of possession and that it did not include in the order any reasons for deviating from the standard terms. Her sixth point is a complaint that the order appointing joint managing conservators does not include certain provisions mandated by section 14.021(f), such as designating the manner of establishing Michael's residence. *See id.* § 14.021(f).

Because Michael was under three years of age when the order was entered, the court could deviate from the standard terms of possession without listing its reasons in the order. *See id.* § 14.032(b). Moreover, the evidence indicates that the terms of the order are appropriate under the circumstances, and Sandra does not contend or show otherwise. She argues, however, that the record does not indicate the court relied on section 14.032(b) to justify a deviation from the standard order. That argument is best answered by noting that the record does not show the court did not rely on that section.

If an order relating to a child under three deviates from the standard terms, section 14.032(b) requires the court to enter an order that will become effective on the child's third birthday. *Id.* The order must be entered prospectively—i.e., it must be entered at the time the order deviating from the standard terms is entered—and it must contain either the standard terms or the reasons the court has deviated from the standard order. *Id.;* § 14.033(k).

The record does not reflect that the court entered a prospective order that would become effective upon Michael's third birthday. Assuming that it failed to do so, that would not affect the validity of the terms of the order that is before us for review, entered while he was under three years of age. Point four is overruled.

That the court omitted from the order appointing joint managing conservators provisions required by section 14.021(f) does not make the order void. Any error resulting from the omission of a required provision is harmless, and Sandra does not allege that she has been harmed by the

omission. Because the trial court has continuing jurisdiction over Michael's conservatorship and because possessory orders are interlocutory, Sandra can request the trial court to modify the order to include any omitted provision. Furthermore, she can request the court to enter a standard order and, if the court refuses to do so, she can then appeal the denial. Point six, the final point, is overruled and the judgment is affirmed.