Opinion filed July 19,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-11-00117-CV

                                                    __________

 

           IN THE INTEREST
OF A.D.B., A.B.B., AND A.L.B., children



 

                                   On
Appeal from the 118th District Court

 

                                                          Howard
County, Texas

 

                                                     Trial
Court Cause No. 47,012

 



 

                                            M
E M O R A N D U M   O P I N I O N

Clayton
and Jessica appeal from an order terminating the parental rights to their
children, following a trial before the court.  Clayton urges in six issues that
the evidence is legally and factually insufficient to support the trial court’s
findings that he knowingly placed or knowingly allowed the children to remain
in conditions or surroundings that endangered the physical or emotional well-being of the children, that he engaged in conduct or knowingly placed the children with
persons who engaged in conduct that endangered the physical or emotional
well-being of the children, and that termination of his parental rights to the
children is in their best interest.  Jessica contends in a sole issue on appeal
that the evidence is legally and factually insufficient to support the trial
court’s finding that termination of her parental rights to the children is in their
best interest.  We affirm.

We
will first consider Clayton’s appeal.  As the basis for termination of his
parental rights, the trial court, in its order, found that Clayton knowingly
placed or knowingly allowed the children to remain in conditions or
surroundings that endangered the physical or emotional well-being of the
children; that he engaged in conduct or knowingly placed the children with
persons who engaged in conduct that endangered the physical or emotional
well-being of the children; that he constructively abandoned the children who had
been in the permanent or temporary managing conservatorship of the Texas
Department of Family and Protective Services or an authorized agency for not
less than six months and (1) the Department or authorized agency made
reasonable efforts to return the children to the father, (2) the father did not
regularly visit or maintain significant contact with the children, and (3) the
father demonstrated an inability to provide the children with a safe
environment; and that he failed to comply with the provisions of a court order
that specifically established the actions necessary for the father to obtain
the return of the children who had been in the permanent or temporary managing
conservatorship of the Department for not less than nine months as a result of
the children’s removal from the parent under Chapter 262 of the Family Code for
the abuse or neglect of the children.

Clayton questions the sufficiency of the evidence to support
two of the grounds for termination found by the trial court, but does not
question the sufficiency of the evidence to support two others.  That being the
case, this court is not required to consider the sufficiency of the evidence of
those grounds questioned by Clayton because the two grounds for termination
that he has not questioned in this appeal, coupled with the court’s finding
that termination of Clayton’s parental rights is in the children’s best
interest, are sufficient to support the trial court’s order of termination.  See
In re D.S., 333 S.W.3d 379, 388–89 (Tex. App.—Amarillo 2011, no pet.). 
We overrule Clayton’s Issues One, Two, Three, and Four.

Jessica does not challenge the sufficiency
of the evidence to support any of the grounds for termination found by the
trial court.  We, therefore, proceed to determine, as to both Clayton and
Jessica, whether the evidence is legally or factually insufficient to support
the trial court’s finding that the termination of each of their parental rights
to the children is in the children’s best interest.  To terminate parental
rights, the factfinder must find by clear and convincing evidence that the
parent has committed an act prohibited by Section 161.001(1) of the Family Code
and that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (West
Supp. 2011); In re J.P.B., 180 S.W.3d 570, 572 (Tex. 2005).  In
conducting a legal sufficiency review in a parental termination case, we review
all the evidence in the light most favorable to the finding to determine
whether a reasonable factfinder could have formed a firm belief or conviction
that the finding was true.  State v. K.E.W., 315 S.W.3d 16, 20 (Tex.
2010).  We resolve disputed fact questions in favor of the finding if a
reasonable factfinder could have done so, and we disregard all contrary
evidence unless a reasonable factfinder could not have done so.  Id.

In a factual sufficiency review, we must
give due consideration to evidence that the factfinder could reasonably have
found to be clear and convincing.  In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002).  The inquiry must be whether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the State’s
allegations.  Id.  We are to consider whether disputed evidence is such
that a reasonable factfinder could not have resolved that evidence in favor of
the finding.  Id.  If, in light of the entire record, any disputed
evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction, then the evidence is factually insufficient.  Id. 


Lauren Chesworth testified that she
is an investigator with the Texas Department of Family and Protective
Services.  She related that the initial report received in the case in January
2010 was that Jessica was driving around at 4:00 a.m. with a friend and one of
the children, while Jessica was smoking methamphetamine.  She indicated that on
February 25, 2010, both Jessica and Clayton agreed to random hair follicle drug
screens and a drug and alcohol assessment.  She stated that the case was
changed to a removal case when, on April 6, 2010, the results from hair
follicle screenings showed that Jessica was positive for cocaine and
methamphetamine and that Clayton was positive for cocaine, amphetamine, and
metham-phetamine.  Chesworth testified that allowing children to remain in this
type of environment could endanger their physical and emotional well-being.

On cross-examination, Chesworth
acknowledged that Jessica never admitted that the incident with methamphetamine
occurred and that a February 2010 drug test of Jessica was negative.  She said that
Clayton’s February drug test resulted in “a dilute specimen.”

Jessica testified that she was
working at a fast-food restaurant in Lubbock, Texas.  She acknowledged having
used illegal drugs, including cocaine, methamphetamine, and marihuana, but
insisted that she probably last used drugs in the beginning of 2010.  She also
declared that, although she was arrested in February 2010 for selling marihuana,
she did not do so.  Acknowledging that someone who uses drugs who cares for their
children while doing so could be endangering the children, Jessica denied being
a drug addict, indicating that she no longer was dabbling in drugs because she
realized “what drugs got [her].”

Although denying that she used
drugs after January 2010, Jessica acknowledged that she had a positive drug
test for methamphetamine in January 2011 and that she had used marihuana since
that time.  She stated that she had not previously acknowledged the marihuana
use after January 2010 because she thought she was being asked about harder
drugs.  She expressed bewilderment as to why she kept failing hair follicle
drug tests.  She acknowledged failing to show up for several drug tests.  She
indicated that, although she was not in contact with her courtesy worker in
Lubbock for several months, she saw her children every month.  She acknowledged
that she had not done anything to show that she could change.

On cross-examination, Jessica
acknowledged that she had no excuse for not showing up for drug testing,
stating that she did not take it as seriously then as she did at the time of
trial.   She noted that she had moved to a new town, stopped using drugs, and
was renting a two-bedroom duplex with a fenced yard.  While insisting that she
and Clayton do not keep alcohol or drink alcohol in their home, she
acknowledged that, at the time of trial, he was on probation for driving while
intoxicated.

Robin Orr testified that he is an
assistant district attorney in Howard, Martin, and Glasscock Counties.  He
confirmed that Jessica had two pending cases for state jail delivery of marihuana,
indicating that she had been identified as delivering on two separate
occasions.  He said he anticipated that she would be indicted by the grand
jury.

Clayton testified that he is
employed by a drilling company.  He said that he lives with Jessica, his
common-law wife, in Lubbock.  Clayton acknowledged that, if someone is under
the influence of drugs while trying to be a parent, that could be endangering
to the child.  Clayton acknowledged that he had used drugs with Jessica but
could not say when or if they had used them more than once.  He denied that
Jessica was selling drugs from their home.  He acknowledged that he had used
marihuana in high school and that he had used cocaine and methamphetamine since
high school.  He said he received his GED in 2007.

While acknowledging that someone
who abuses alcohol could endanger his or her child, Clayton insisted that he
had had nothing to drink since Thanksgiving 2010 and that he does not drink and
drive with children in his car.  Clayton acknowledged missing several random
drug testings he was asked to attend, although he was informed that, if he missed
a test, it would be considered positive.  He acknowledged testing positive
since the beginning of this case, in September 2010 and January 2011 for
cocaine and methamphetamine.

On cross-examination, Clayton
testified that he had assisted in getting the house ready for the children. 
While stating that the situation of drugs and alcohol was behind him, Clayton
acknowledged that he had tested positive for drugs since April 2010, when the
kids were taken away.

John Haynes testified that he is
employed with the narcotics unit of the Big Spring Police Department.  He
indicated that he had an arrest warrant for Clayton for the offense of driving
while license invalid and that he was taking him to jail after the trial.

Tony Marquez testified that he is a
licensed chemical dependency counselor.  He said that, with respect to
outpatient treatment, Jessica had done everything required, including attending
sessions from May 2010 to possibly June 2010.  He said that he had recommended
that Jessica and Clayton go to Alcoholics Anonymous but that they were not
doing that.  He said that, while Jessica and Clayton “[k]ind of” had an understanding
of their problem, he did not think they had “some grip” on that problem.

Bess Tello testified that she is a
caseworker for the Texas Department of Family and Protective Services and is
familiar with Jessica and Clayton.  After indicating that children may become
delayed when they are cared for by people who use drugs and that the parents
are unable to parent the children and make correct parenting decisions for
them, Tello expressed the opinion that it is endangering conduct for Jessica
and Clayton to do drugs while attempting to care for their children.  She said
that it was endangering conduct for either parent to leave their children with
someone who was using drugs.

Tello testified that Jessica tested
positive for marihuana twice in June 2010 and tested positive in a hair
follicle test in January 2011 for amphetamines and methamphetamine.  She said
that Clayton tested positive in a hair follicle test in September 2010 for
amphetamine, methamphetamine, and cocaine; that the Department was unable to
locate him in October and November; and that he did not appear for a test in
December.  She said that, on January 5, 2011, Clayton tested positive in a hair
follicle test for amphetamine, methamphetamine, marihuana, and cocaine.

Tello said she made several efforts
to contact Jessica to set up a treatment program, but failed to do so.  She
indicated that Jessica was not available at her home and that her phone was
disconnected.  Tello expressed her opinion that it was endangering conduct for
Jessica and Clayton to use drugs and take care of children because that could
be a danger to their physical and mental welfare.  She said that it was a
danger because it could lead to further neglect of the children and could be
physically and emotionally dangerous to the children as well.

Tello testified that both Jessica
and Clayton were given weekly visitations with the children.  She said that
Jessica attended nine of forty possible visits from May 2010 to March 2011. 
She indicated that the children during this time received no letters, clothing,
or pictures from Jessica.  She related that she did not consider nine visits to
be significant contact with the children.  She expressed the opinion that there
was a bonding issue and said that she thought it was constructive abandonment. 
She stated that the children look forward to their parents’ visits and that
they are upset when the parents do not make it.

Tello testified that Clayton
attended eleven visits out of forty from May 2010 to March 2011.  She said he
also sent no letters, pictures, or cards.  She characterized his conduct also
as constructive abandonment.  She indicated at least ten of the visits were
ones in which there was no phone call that he was not coming—he just did not
show up.

Tello testified that she had
numerous contacts with the parents.  She indicated, however, that she would try
to look for them while they were in Big Spring but that neither Jessica nor
Clayton provided her with an address.  She said that there were times when their
telephone was disconnected for a month.  She stated that a courtesy worker
assigned to them while they were in Lubbock also had difficulty maintaining
contact with them and, after visiting the home on several occasions and making
telephone calls, was not able to locate either of them.

Tello testified that Jessica and
Clayton missed several drug tests.  She indicated that Jessica had six no-shows
and could not be located in October and November to be sent to a drug test. 
She said that Clayton had three no-shows and also could not be located in October
or November.  She expressed her belief that the parents were not meeting the
children’s needs prior to their children coming into the Department’s care, and
she noted that the parents moved around a lot and that their employment was
unstable.  She related that the children were currently in an emotionally safe
home that was free of physical danger, whereas they were not in such an
environment when with the parents because of their use of illegal substances in
the home and their involvement with criminal activity.  She stated her firm
belief that termination is necessary to protect the children and let them move
on with their childhood.

Tello acknowledged on
cross-examination that, when the parents were in Lubbock and the children were
in foster care in Midland, visitation required their traveling between those
two cities.  We take judicial notice that the distance from Lubbock to Midland
is between 117 to 118 miles and that a trip from one to the other takes slightly
over two hours each way.

Tello acknowledged that the
parents’ house is appropriate but that, although given the opportunity to
change their lives and show their ability to provide a safe home for the
children, neither Jessica nor Clayton had done so.

An extended number of factors have
been considered by the courts in ascertaining the best interest of the child.  Holley
v. Adams, 544 S.W.2d 367, 371 (Tex. 1976).  Included among these are the
following: (A) the
desires of the child; (B) the emotional and physical needs of the child now and
in the future; (C) the emotional and physical danger to the child now and in
the future; (D) the parental abilities of the individuals seeking custody; (E)
the programs available to assist these individuals to promote the best interest
of the child; (F) the plans for the child by these individuals or by the agency
seeking custody; (G) the stability of the home or proposed placement; (H) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one; and (I) any excuse for the acts
or omissions of the parent.  544 S.W.2d at 371.  This listing is by no means
exhaustive, but does indicate a number of considerations that either have
been or would appear to be pertinent.  Id. at 371–72.

We will consider each
of the factors as set forth in Holley:

The
Desires of the Children

Of the three children
in this case, one was almost five years of age at the time of trial, while the other
two were two years of age.  There is no express evidence of their desires with
respect to termination.  Jessica refers us to her testimony that the children
did not understand why they could not go home with her and evidence that one of
the children was upset when Jessica did not visit.

The
Emotional and Physical Needs of the Children Now and in the Future

The
Emotional and Physical Danger to the Children Now and in the Future

We have in our
discussion of the evidence shown that both Jessica and Clayton have used a
variety of illegal drugs, including amphetamine, methamphetamine, cocaine, and
marihuana, for many years and have continued to do so during the pendency of
this case.  We also noted evidence that they each failed to show up for other
drug tests and did not keep in contact with the Department so that they could
be advised of additional drug tests.  We have also noted that both Jessica
and Clayton presented evidence that they were no longer using illegal drugs.  Jessica,
Clayton, and the Department all agree that the use of illegal drugs by parents
constitutes a danger to the physical and emotional well-being of the children.

The Parental
Abilities of the Individuals Seeking Custody

Tello testified that both Jessica
and Clayton were given weekly visitation with the children between May 2010 and
March 2011 but that Jessica attended only nine visits out of forty possible
visits and Clayton attended eleven of those forty possible visits.  She said that
neither sent the children any letters, pictures, or cards during that time.  As
we have noted, while the children were in Midland and the parents in Lubbock, a
visit would have required driving approximately 117 to 118 miles in slightly
over two hours each way.

The
Programs Available to Assist Those Individuals to Promote the

Best
Interest of the Child

Both Jessica and
Clayton fulfilled requirements for drug counseling with Marquez.  However,
neither attended Alcoholics Anonymous regularly, as Marquez recommended.  With
respect to She’s for Sure, an additional program that Jessica was supposed to
attend, she testified that she could not attend at the time and that, when she
moved to Lubbock, the Department was supposed to give her another program but
did not.  Tello, the children’s caseworker, testified that a substitute program
was not set up for Jessica in Lubbock because efforts to contact Jessica were
unsuccessful since she was not available at home and her phone was
disconnected.  Jessica testified that she had asked Tello, as well as the
courtesy caseworker in Lubbock, several times regarding information about a
program and that they said they were getting it.

Plans
for the Child by These Individuals or by the Agency Seeking Custody

Jessica testified
that she is renting a duplex to bring her children to and that she had brought
pictures of the room that she set up for them.  She indicated that it has two
bedrooms and
a fenced yard.  She related that she and Clayton had had the house since
December 2010.  She said she has two bunk beds and also toddler beds.

Clayton testified that he has
assisted in getting the house prepared for the children.  He said he feels like
it is ready for them.

Tello, the children’s caseworker,
acknowledged that the home is acceptable but testified that she felt that it is
in the children’s best interest to be adopted.  She indicated that the
Department’s plan for the
children
is termination, followed by unrelated adoption.

Acts or
Omissions of the Parent that May Indicate that the Existing

Parent-Child
Relationship Is Not a Proper One and Any Excuse for the

Acts or
Omissions of the Parent

We have detailed under other Holley
factors evidence of the drug use of both parents, of their failure to
follow through on services to assist them with that, and of their limited
visitation and communication with the children during the time the children were
in the Department’s care.  We have also detailed Jessica’s and Clayton’s
testimony that they are no longer drinking or using illegal substances and
their excuses for not following through on services and not visiting a great
deal of the time with the children or communicating with them through letters,
cards, or pictures. 

We find that the evidence is both
legally and factually sufficient to support the trial court’s finding that
termination of the parental rights of both Jessica and Clayton to their three
children is in the children’s best interest. 

In arguing that the evidence is
insufficient, both Jessica and Clayton indicate that termination is not in the
best interest of the children because they are living in an acceptable home,
they are good parents, they are drug and alcohol free, they attended most of
the programs the Department wanted them to attend, the children want to stay
with them, and the children might be separated in an adoption after
termination.  While they understandably have construed the evidence in a way
favorable to their position, the evidence supports the trial court’s finding
because it would justify the court’s having a firm belief that, based on their
past conduct, Jessica and Clayton would continue to engage in criminal
activity, including the use of illegal drugs; that this would endanger the
children; that neither Jessica nor Clayton fully complied or participated in
programs available to assist them in living without the use of illegal drugs;
and that many of their excuses for missing drug tests, failing to participate
in additional programs, and failing to have significant visitation or
communication with the children while they were in the Department’s care were
not bona fide.  The evidence is legally sufficient because all of this together
would support a firm belief on the part of the trial court that termination of
the parental rights of Jessica and Clayton was in the best interest of the
children.  See In re J.O.A., 283 S.W.3d 336, 346 (Tex. 2009) (recent
evidence of improved conduct, especially of short duration, does not
conclusively negate the probative value of a long history of drug use and
irresponsible choices).

The evidence is factually
sufficient because we are not aware of any disputed evidence that the trial
court could not have credited in favor of the holding that was so significant
that the trial court could not reasonably have formed a firm belief or
conclusion that termination of the parental rights of Jessica and Clayton was
in the best interest of the children.

Jessica suggests that this is a
“close call” or a “close case” that should have been decided in favor of her as
a parent, citing Ray v. Burns, 832 S.W.2d 431, 434 (Tex. App.—Waco 1992,
no pet.).  We find that both Ray and Lewelling v. Lewelling, a
case cited by Ray, involve conservatorship disputes between parents and
nonparents, not cases involving termination of parental rights.  Lewelling
v. Lewelling, 796 S.W.2d 164 165 (Tex. 1990); Ray, 832 S.W.2d at 432.
 Even if we were to apply that standard in termination of parental rights
cases, we note that, in Ray, the court upheld an award of
conservatorship to a nonparent, stating that evidence of the parent’s unstable
lifestyle, including evidence that the instability had continued up until a few
months before trial, would support the trial court’s award of conservatorship
to the nonparent.  Ray, 832 S.W.2d at 435.  With respect to the
mother’s apparent argument that her current stability would prohibit the trial
court from considering her past lifestyle, the court stated, “Past is often
prologue.”  Id.  We overrule Jessica’s sole issue
on appeal and overrule Clayton’s Issues Five and Six.

The order of the trial court is
affirmed.

 

                                                                                    PER
CURIAM

 

July
19, 2012

Panel consists
of: Wright, C.J.,

McCall, J., and
Hill.[1]









[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth, sitting by assignment.