

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

———————————————

## No. 07-12-0541-CV

———————————————

## IN THE INTEREST OF V.J.G. AND J.A.G., CHILDREN

On Appeal from the County Court at Law #2
Randall County, Texas
Trial Court No. 8834-L2, Honorable Jack Graham, Presiding

## March 26, 2013

## MEMORANDUM OPINION

Before Quinn, C.J., and Campbell and Pirtle, JJ.

After a November 5, 2012 bench trial, the court signed an order terminating the parental rights of the father and mother to their children V.J.G. and J.A.G, and appointing appellee the Texas Department of Family and Protective Services the children's permanent managing conservator.[1]   The order rests on findings that

---

[1] We identify the children by their initials and the parents as the father and mother.  *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2012); Tex. R. App. P. 9.8(a),(b)(2).

termination is in the best interest of V.J.G. and J.A.G. and the father and mother each committed three of the statutory acts predicate to termination.[2]

The father and mother raise five issues on appeal but concede four do not present reversible error. Through their remaining issue, the parents argue the evidence was insufficient to support the finding that termination was in the best interest of the children. Finding the evidence supporting the trial court's best interest finding is both legally and factually sufficient, we will affirm.

Analysis

In their first issue, the father and mother challenge the legal and factual sufficiency of the evidence supporting the trial court's finding under predicate ground § 161.001(1)(E) but concede the correctness of its findings of the subsections (D) and (O) predicate grounds. Since an affirmative finding of a single predicate ground will support termination of the parent-child relationship under § 161.001, we overrule the first issue of the father and mother. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003) (a finding of only one predicate ground will support termination when there is also a finding that termination is in the child's best interest).

Through their third issue the father and mother argue the trial court abused its discretion by admitting the testimony of an expert who, they contend, lacked qualification. They add, however, that the error was harmless because the testimony

---

[2] *See* Tex. Fam. Code Ann. § 161.001(1) (D), (E), & (O) and (2) (West Supp. 2012).

was merely cumulative of other witness testimony. We overrule the third issue of the father and mother.

In their fourth issue, the father and mother point to a purported error by their trial counsel but concede it does not rise to the level of ineffectiveness under the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See In re M.S.,* 115 S.W.3d 534, 545 (Tex. 2003) (adopting *Strickland* standard in parental-rights termination proceedings). The fourth issue of the father and mother is overruled.

By their second issue, the father and mother argue the evidence supporting the trial court's finding that termination of parental rights is in the best interest of V.J.G. and J.A.G. is insufficient.

Termination of parental rights under Family Code § 161.001 requires proof by clear and convincing evidence that the parent committed one of the acts or omissions listed in § 161.001(1)(A)—(T) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1),(2) (West Supp. 2012); *In re A.V.,* 113 S.W.3d at 362. Clear and convincing evidence is the degree of proof that produces in the mind of the factfinder a firm belief or conviction of the truth of the allegations to be proved. *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002).

Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* However, we take into account

undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.*

Through the factual sufficiency analysis, we examine the entire record determining whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" as to the challenged finding. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.,* 96 S.W.3d at 266. If the evidence that could not be credited in favor of the finding is so great that it would prevent a reasonable factfinder from forming a firm belief or conviction that either of the statutory requirements has been met, the evidence is factually insufficient and the termination will be reversed. *Id.*

The best interest of a child determination does not require evidence of a particular set of factors. *In re C.J.O.,* 325 S.W.3d 261, 266 (Tex.App.--Eastland 2010, pet. denied). In *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976), the court provided a list of factors the trier of fact in a termination case may consider in determining the best interest of the child. These factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The *Holley* factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to parental termination. *In re C.H.,* 89 S.W.3d at 27; *Adams v. Tex. Dep't of Family & Protective Servs.,* 236 S.W.3d 271, 280 (Tex.App.--Houston [1st Dist.] 2007, no pet.). The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex.App.--Amarillo 2003, no pet.). And a best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re S.H.A.,* 728 S.W.2d 73, 86-87 (Tex.App.--Dallas 1987, writ ref'd n.r.e.). The trier of fact may measure the future conduct of parents by their past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex.App.--Waco 1997, pet. denied), *overruled on other grounds by In re C.H.,* 89 S.W.3d at 26.

The law recognizes a strong presumption that the best interest of a child is served by keeping custody in the natural parents. *In re D.T.,* 34 S.W.3d 625, 641 (Tex.App.--Fort Worth 2000, pet. denied). We recognize also, however, that the court's inquiry examines the best interest of the child, not that of the parent. *Dupree v. Texas Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex. App.--Dallas 1995, no writ).

Trial testimony shows the Department became involved with the parents and children after receiving an intake report concerning the family in June 2011. According to a Department caseworker, the report indicated the children were bruised and the father was seen "kicking and slapping" them. The father allegedly "use[d]

5

methamphetamines while caring for both children and [the mother] was not protective of the children and was aware that the father was using while he was caring for the children and that [the mother] would leave the children with him while she went to work." On June 23, 2011, the children were removed from the parents' home and placed in foster care as an emergency because of the father's drug use coupled with the mother's knowledge of his conduct and inaction. At the time, V.J.G. was age three and J.A.G. was age twenty-three months.

The father tested positive for methamphetamine in a hair follicle drug test performed the day after the children were removed. The mother and the children tested negative. The father told the Department investigator he did not believe his drug use in the home with the children present created a problem since it occurred in another room and he sometimes covered the air conditioning vent. The father told a counselor conducting therapy for the family that he was "high" around the children although he did not admit using drugs around the children. According to the caseworker, the mother was aware of the father's drug use but needed him to watch the children. She echoed these facts to the family counselor. The Department's service plan for the father required completion of a program of inpatient drug treatment. He participated and received a certificate of completion from the program in November 2011. Thereafter, however, the father had positive drug tests for methamphetamine and amphetamine in December 2011, as well as in May and July 2012. The latter test was also positive for marijuana. According to the caseworker, after the father relapsed into drug use he told her "using twice in three months was pretty all right." The family counselor saw no remorse in the father over his relapse. When asked at trial how long after completing

in-patient treatment he relapsed into methamphetamine use, the father interposed his Fifth Amendment right against self-incrimination.[3]  According to the family counselor, the father attempted to convince her "that he is calm and laid back and a cheerful sort of guy when he's high as an indicator that he does not present a risk to his children when he's using."  In her opinion, the father has a substance abuse problem evinced by a relapse and willingness to use illegal drugs even in the face of losing his children.  She believed the father was not committed to sobriety.

The father testified at trial.  He acknowledged he has a drug problem, and asserted he had taken steps to cure the problem.  He also told the court that the ability to see his children was sufficiently important to him to deter his use of drugs.

Concerning bruises on the children, the father initially indicated to the Department he spanked them with a belt.  Later in the case he denied knowledge of causation of the bruises but explained the girls played rough with their cousins.  On cross-examination, the caseworker agreed the father told her "he was old fashion (sic) and he beat his children according to the way he was beat."

---

[3] A party may assert the Fifth Amendment privilege against self-incrimination in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it."  *Texas Dep't of Pub. Safety Officers Ass'n v. Denton,* 897 S.W.2d 757, 760 (Tex. 1995) (quoting *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924)).  In a civil case, the fact finder is free to draw negative inferences from a party's assertion of the privilege against self-incrimination.  *Webb v. Maldonado,* 331 S.W.3d 879, 883 (Tex.App.--Dallas 2011, pet. denied) (citing Tex. R. Evid. 513(c); *Wilz v. Flournoy,* 228 S.W.3d 674, 677 (Tex. 2007); *Denton,* 897 S.W.2d at 760).  The United States Supreme Court has stated: "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."  *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

7

The family counselor opined at the beginning of therapy the mother appeared "very dependent, very shy, very much in defense of [the father]." And, according to the family counselor, the mother made no progress through the therapy. But she believed the children were bonded with their mother. In the opinion of the caseworker, the mother never acknowledged that she or the father had done anything wrong. The mother repeatedly told the caseworker the father was "going to be clean this time." The caseworker also believed the mother did not demonstrate a capacity to protect the children if returned to her care. When the caseworker told the mother she might have to choose between the father and the children she expressed the intention of remaining with the father.

According to the caseworker, the Department would have "huge concerns" returning the children to the mother even were the father removed from the home. This, the caseworker explained, was because the mother never acknowledged the father's addiction, she desired to remain with the father, and her inactive role as a sole parent.

A psychologist who evaluated the father and the mother felt the children would "probably" be at risk if returned to the home. He noted the mother's defensiveness and past willingness to allow the children to remain in proximity to the father's active drug use. He did not observe "a lot" of remorse in terms of accepting responsibility, but noted the mother's sadness at the children's removal from the home. The family counselor felt it was unlikely the mother would report a violation by the father should the court return the children to the mother and order him to leave the family home. In her opinion, the mother's parental rights to the children should be terminated because of her incapacity or unwillingness to protect them and educate herself about the father's

8

addiction. She also testified in favor of terminating the father's parental rights because of his unwillingness to manage his drug addiction or seek assistance.

The foster parents did not testify but evidence indicated their interest in adoption. A licensed professional counselor conducting therapy with the children believed they bonded with the foster parents.

As fact finder the trial court heard evidence of the father's physical treatment of the children and his ongoing battle with drug addiction as well as the mother's unwavering passivity, carried to the point of endangering the children. Therapeutic programs were available for the parents and in a general sense they participated. But evidence of prior endangering conduct was not tempered by an indication of concrete change or even a willingness to change. The fact finder may measure parents' future conduct by their prior conduct and infer parents engaging in abusive or neglectful conduct will continue doing so in the future. *In re McDaniel,* No. 01-11-00711-CV, 2011 Tex. App. Lexis 8228, at *22 (Tex.App.--Houston [1st Dist.] Oct. 11, 2011, orig. proc.); *see Ray v. Burns,* 832 S.W.2d 431, 435 (Tex.App.--Waco 1992, no writ) ("Past is often prologue").

Viewing the evidence under the applicable standards, we conclude the evidence was both legally and factually sufficient to support the finding that termination of the parental rights of the father and mother was in the best interest of V.J.G. and J.A.G. In particular, any disputed evidence that the court could not have resolved in favor of its finding was not so significant as to prevent a reasonable fact finder from forming a firm

9

belief that termination was in the children's best interest.  The second issue of the father and mother is overruled.

Conclusion

Having overruled each of the issues of the father and mother, we affirm the judgment of the trial court.


James T. Campbell
Justice