**Opinion filed July 19, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-11-00117-CV
_____

## IN THE INTEREST OF A.D.B., A.B.B., AND A.L.B., children

### On Appeal from the 118th District Court

### Howard County, Texas

### Trial Court Cause No. 47,012

## M E M O R A N D U M   O P I N I O N

Clayton and Jessica appeal from an order terminating the parental rights to their children, following a trial before the court. Clayton urges in six issues that the evidence is legally and factually insufficient to support the trial court's findings that he knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, that he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, and that termination of his parental rights to the children is in their best interest. Jessica contends in a sole issue on appeal that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights to the children is in their best interest. We affirm.

We will first consider Clayton's appeal. As the basis for termination of his parental rights, the trial court, in its order, found that Clayton knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; that he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; that he constructively abandoned the children who had been in the permanent or temporary managing conservatorship of the Texas Department of Family and Protective Services or an authorized agency for not less than six months and (1) the Department or authorized agency made reasonable efforts to return the children to the father, (2) the father did not regularly visit or maintain significant contact with the children, and (3) the father demonstrated an inability to provide the children with a safe environment; and that he failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 of the Family Code for the abuse or neglect of the children.

Clayton questions the sufficiency of the evidence to support two of the grounds for termination found by the trial court, but does not question the sufficiency of the evidence to support two others. That being the case, this court is not required to consider the sufficiency of the evidence of those grounds questioned by Clayton because the two grounds for termination that he has not questioned in this appeal, coupled with the court's finding that termination of Clayton's parental rights is in the children's best interest, are sufficient to support the trial court's order of termination. *See In re D.S.*, 333 S.W.3d 379, 388–89 (Tex. App.—Amarillo 2011, no pet.). We overrule Clayton's Issues One, Two, Three, and Four.

Jessica does not challenge the sufficiency of the evidence to support any of the grounds for termination found by the trial court. We, therefore, proceed to determine, as to both Clayton and Jessica, whether the evidence is legally or factually insufficient to support the trial court's finding that the termination of each of their parental rights to the children is in the children's best interest. To terminate parental rights, the factfinder must find by clear and convincing evidence that the parent has committed an act prohibited by Section 161.001(1) of the Family Code and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011); *In re J.P.B.*, 180 S.W.3d 570, 572 (Tex. 2005). In conducting a legal sufficiency review

2

in a parental termination case, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *Id.*

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The inquiry must be whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the State's allegations. *Id.* We are to consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of the finding. *Id.* If, in light of the entire record, any disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Lauren Chesworth testified that she is an investigator with the Texas Department of Family and Protective Services. She related that the initial report received in the case in January 2010 was that Jessica was driving around at 4:00 a.m. with a friend and one of the children, while Jessica was smoking methamphetamine. She indicated that on February 25, 2010, both Jessica and Clayton agreed to random hair follicle drug screens and a drug and alcohol assessment. She stated that the case was changed to a removal case when, on April 6, 2010, the results from hair follicle screenings showed that Jessica was positive for cocaine and methamphetamine and that Clayton was positive for cocaine, amphetamine, and methamphetamine. Chesworth testified that allowing children to remain in this type of environment could endanger their physical and emotional well-being.

On cross-examination, Chesworth acknowledged that Jessica never admitted that the incident with methamphetamine occurred and that a February 2010 drug test of Jessica was negative. She said that Clayton's February drug test resulted in "a dilute specimen."

Jessica testified that she was working at a fast-food restaurant in Lubbock, Texas. She acknowledged having used illegal drugs, including cocaine, methamphetamine, and marihuana, but insisted that she probably last used drugs in the beginning of 2010. She also declared that,

3

although she was arrested in February 2010 for selling marihuana, she did not do so. Acknowledging that someone who uses drugs who cares for their children while doing so could be endangering the children, Jessica denied being a drug addict, indicating that she no longer was dabbling in drugs because she realized "what drugs got [her]."

Although denying that she used drugs after January 2010, Jessica acknowledged that she had a positive drug test for methamphetamine in January 2011 and that she had used marihuana since that time. She stated that she had not previously acknowledged the marihuana use after January 2010 because she thought she was being asked about harder drugs. She expressed bewilderment as to why she kept failing hair follicle drug tests. She acknowledged failing to show up for several drug tests. She indicated that, although she was not in contact with her courtesy worker in Lubbock for several months, she saw her children every month. She acknowledged that she had not done anything to show that she could change.

On cross-examination, Jessica acknowledged that she had no excuse for not showing up for drug testing, stating that she did not take it as seriously then as she did at the time of trial. She noted that she had moved to a new town, stopped using drugs, and was renting a two-bedroom duplex with a fenced yard. While insisting that she and Clayton do not keep alcohol or drink alcohol in their home, she acknowledged that, at the time of trial, he was on probation for driving while intoxicated.

Robin Orr testified that he is an assistant district attorney in Howard, Martin, and Glasscock Counties. He confirmed that Jessica had two pending cases for state jail delivery of marihuana, indicating that she had been identified as delivering on two separate occasions. He said he anticipated that she would be indicted by the grand jury.

Clayton testified that he is employed by a drilling company. He said that he lives with Jessica, his common-law wife, in Lubbock. Clayton acknowledged that, if someone is under the influence of drugs while trying to be a parent, that could be endangering to the child. Clayton acknowledged that he had used drugs with Jessica but could not say when or if they had used them more than once. He denied that Jessica was selling drugs from their home. He acknowledged that he had used marihuana in high school and that he had used cocaine and methamphetamine since high school. He said he received his GED in 2007.

While acknowledging that someone who abuses alcohol could endanger his or her child, Clayton insisted that he had had nothing to drink since Thanksgiving 2010 and that he does not

4

drink and drive with children in his car. Clayton acknowledged missing several random drug testings he was asked to attend, although he was informed that, if he missed a test, it would be considered positive. He acknowledged testing positive since the beginning of this case, in September 2010 and January 2011 for cocaine and methamphetamine.

On cross-examination, Clayton testified that he had assisted in getting the house ready for the children. While stating that the situation of drugs and alcohol was behind him, Clayton acknowledged that he had tested positive for drugs since April 2010, when the kids were taken away.

John Haynes testified that he is employed with the narcotics unit of the Big Spring Police Department. He indicated that he had an arrest warrant for Clayton for the offense of driving while license invalid and that he was taking him to jail after the trial.

Tony Marquez testified that he is a licensed chemical dependency counselor. He said that, with respect to outpatient treatment, Jessica had done everything required, including attending sessions from May 2010 to possibly June 2010. He said that he had recommended that Jessica and Clayton go to Alcoholics Anonymous but that they were not doing that. He said that, while Jessica and Clayton "[k]ind of" had an understanding of their problem, he did not think they had "some grip" on that problem.

Bess Tello testified that she is a caseworker for the Texas Department of Family and Protective Services and is familiar with Jessica and Clayton. After indicating that children may become delayed when they are cared for by people who use drugs and that the parents are unable to parent the children and make correct parenting decisions for them, Tello expressed the opinion that it is endangering conduct for Jessica and Clayton to do drugs while attempting to care for their children. She said that it was endangering conduct for either parent to leave their children with someone who was using drugs.

Tello testified that Jessica tested positive for marihuana twice in June 2010 and tested positive in a hair follicle test in January 2011 for amphetamines and methamphetamine. She said that Clayton tested positive in a hair follicle test in September 2010 for amphetamine, methamphetamine, and cocaine; that the Department was unable to locate him in October and November; and that he did not appear for a test in December. She said that, on January 5, 2011, Clayton tested positive in a hair follicle test for amphetamine, methamphetamine, marihuana, and cocaine.

5

Tello said she made several efforts to contact Jessica to set up a treatment program, but failed to do so. She indicated that Jessica was not available at her home and that her phone was disconnected. Tello expressed her opinion that it was endangering conduct for Jessica and Clayton to use drugs and take care of children because that could be a danger to their physical and mental welfare. She said that it was a danger because it could lead to further neglect of the children and could be physically and emotionally dangerous to the children as well.

Tello testified that both Jessica and Clayton were given weekly visitations with the children. She said that Jessica attended nine of forty possible visits from May 2010 to March 2011. She indicated that the children during this time received no letters, clothing, or pictures from Jessica. She related that she did not consider nine visits to be significant contact with the children. She expressed the opinion that there was a bonding issue and said that she thought it was constructive abandonment. She stated that the children look forward to their parents' visits and that they are upset when the parents do not make it.

Tello testified that Clayton attended eleven visits out of forty from May 2010 to March 2011. She said he also sent no letters, pictures, or cards. She characterized his conduct also as constructive abandonment. She indicated at least ten of the visits were ones in which there was no phone call that he was not coming—he just did not show up.

Tello testified that she had numerous contacts with the parents. She indicated, however, that she would try to look for them while they were in Big Spring but that neither Jessica nor Clayton provided her with an address. She said that there were times when their telephone was disconnected for a month. She stated that a courtesy worker assigned to them while they were in Lubbock also had difficulty maintaining contact with them and, after visiting the home on several occasions and making telephone calls, was not able to locate either of them.

Tello testified that Jessica and Clayton missed several drug tests. She indicated that Jessica had six no-shows and could not be located in October and November to be sent to a drug test. She said that Clayton had three no-shows and also could not be located in October or November. She expressed her belief that the parents were not meeting the children's needs prior to their children coming into the Department's care, and she noted that the parents moved around a lot and that their employment was unstable. She related that the children were currently in an emotionally safe home that was free of physical danger, whereas they were not in such an environment when with the parents because of their use of illegal substances in the home and

their involvement with criminal activity. She stated her firm belief that termination is necessary to protect the children and let them move on with their childhood.

Tello acknowledged on cross-examination that, when the parents were in Lubbock and the children were in foster care in Midland, visitation required their traveling between those two cities. We take judicial notice that the distance from Lubbock to Midland is between 117 to 118 miles and that a trip from one to the other takes slightly over two hours each way.

Tello acknowledged that the parents' house is appropriate but that, although given the opportunity to change their lives and show their ability to provide a safe home for the children, neither Jessica nor Clayton had done so.

An extended number of factors have been considered by the courts in ascertaining the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976). Included among these are the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. 544 S.W.2d at 371. This listing is by no means exhaustive, but does indicate a number of considerations that either have been or would appear to be pertinent. *Id.* at 371–72.

We will consider each of the factors as set forth in *Holley*:

### *The Desires of the Children*

Of the three children in this case, one was almost five years of age at the time of trial, while the other two were two years of age. There is no express evidence of their desires with respect to termination. Jessica refers us to her testimony that the children did not understand why they could not go home with her and evidence that one of the children was upset when Jessica did not visit.

### *The Emotional and Physical Needs of the Children Now and in the Future*
### *The Emotional and Physical Danger to the Children Now and in the Future*

We have in our discussion of the evidence shown that both Jessica and Clayton have used a variety of illegal drugs, including amphetamine, methamphetamine, cocaine, and marihuana,

7

for many years and have continued to do so during the pendency of this case. We also noted evidence that they each failed to show up for other drug tests and did not keep in contact with the Department so that they could be advised of additional drug tests. We have also noted that both Jessica and Clayton presented evidence that they were no longer using illegal drugs. Jessica, Clayton, and the Department all agree that the use of illegal drugs by parents constitutes a danger to the physical and emotional well-being of the children.

### *The Parental Abilities of the Individuals Seeking Custody*

Tello testified that both Jessica and Clayton were given weekly visitation with the children between May 2010 and March 2011 but that Jessica attended only nine visits out of forty possible visits and Clayton attended eleven of those forty possible visits. She said that neither sent the children any letters, pictures, or cards during that time. As we have noted, while the children were in Midland and the parents in Lubbock, a visit would have required driving approximately 117 to 118 miles in slightly over two hours each way.

### *The Programs Available to Assist Those Individuals to Promote the Best Interest of the Child*

Both Jessica and Clayton fulfilled requirements for drug counseling with Marquez. However, neither attended Alcoholics Anonymous regularly, as Marquez recommended. With respect to She's for Sure, an additional program that Jessica was supposed to attend, she testified that she could not attend at the time and that, when she moved to Lubbock, the Department was supposed to give her another program but did not. Tello, the children's caseworker, testified that a substitute program was not set up for Jessica in Lubbock because efforts to contact Jessica were unsuccessful since she was not available at home and her phone was disconnected. Jessica testified that she had asked Tello, as well as the courtesy caseworker in Lubbock, several times regarding information about a program and that they said they were getting it.

### *Plans for the Child by These Individuals or by the Agency Seeking Custody*

Jessica testified that she is renting a duplex to bring her children to and that she had brought pictures of the room that she set up for them. She indicated that it has two bedrooms and a fenced yard. She related that she and Clayton had had the house since December 2010. She said she has two bunk beds and also toddler beds.

Clayton testified that he has assisted in getting the house prepared for the children. He said he feels like it is ready for them.

Tello, the children's caseworker, acknowledged that the home is acceptable but testified that she felt that it is in the children's best interest to be adopted. She indicated that the Department's plan for the children is termination, followed by unrelated adoption.

### *Acts or Omissions of the Parent that May Indicate that the Existing Parent-Child Relationship Is Not a Proper One and Any Excuse for the Acts or Omissions of the Parent*

We have detailed under other *Holley* factors evidence of the drug use of both parents, of their failure to follow through on services to assist them with that, and of their limited visitation and communication with the children during the time the children were in the Department's care. We have also detailed Jessica's and Clayton's testimony that they are no longer drinking or using illegal substances and their excuses for not following through on services and not visiting a great deal of the time with the children or communicating with them through letters, cards, or pictures.

We find that the evidence is both legally and factually sufficient to support the trial court's finding that termination of the parental rights of both Jessica and Clayton to their three children is in the children's best interest.

In arguing that the evidence is insufficient, both Jessica and Clayton indicate that termination is not in the best interest of the children because they are living in an acceptable home, they are good parents, they are drug and alcohol free, they attended most of the programs the Department wanted them to attend, the children want to stay with them, and the children might be separated in an adoption after termination. While they understandably have construed the evidence in a way favorable to their position, the evidence supports the trial court's finding because it would justify the court's having a firm belief that, based on their past conduct, Jessica and Clayton would continue to engage in criminal activity, including the use of illegal drugs; that this would endanger the children; that neither Jessica nor Clayton fully complied or participated in programs available to assist them in living without the use of illegal drugs; and that many of their excuses for missing drug tests, failing to participate in additional programs, and failing to have significant visitation or communication with the children while they were in the Department's care were not bona fide. The evidence is legally sufficient because all of this together would support a firm belief on the part of the trial court that termination of the parental rights of Jessica and Clayton was in the best interest of the children. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (recent evidence of improved conduct, especially of short duration,

9

does not conclusively negate the probative value of a long history of drug use and irresponsible choices).

The evidence is factually sufficient because we are not aware of any disputed evidence that the trial court could not have credited in favor of the holding that was so significant that the trial court could not reasonably have formed a firm belief or conclusion that termination of the parental rights of Jessica and Clayton was in the best interest of the children.

Jessica suggests that this is a "close call" or a "close case" that should have been decided in favor of her as a parent, citing *Ray v. Burns*, 832 S.W.2d 431, 434 (Tex. App.—Waco 1992, no pet.). We find that both *Ray* and *Lewelling v. Lewelling*, a case cited by *Ray*, involve conservatorship disputes between parents and nonparents, not cases involving termination of parental rights. *Lewelling v. Lewelling*, 796 S.W.2d 164 165 (Tex. 1990); *Ray*, 832 S.W.2d at 432. Even if we were to apply that standard in termination of parental rights cases, we note that, in *Ray*, the court upheld an award of conservatorship to a nonparent, stating that evidence of the parent's unstable lifestyle, including evidence that the instability had continued up until a few months before trial, would support the trial court's award of conservatorship to the nonparent. *Ray*, 832 S.W.2d at 435. With respect to the mother's apparent argument that her current stability would prohibit the trial court from considering her past lifestyle, the court stated, "Past is often prologue." *Id.* We overrule Jessica's sole issue on appeal and overrule Clayton's Issues Five and Six.

The order of the trial court is affirmed.

PER CURIAM

July 19, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Hill.[1]

---

[1] John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.