

# IN THE
# TENTH COURT OF APPEALS

## No. 10-15-00439-CV

## IN THE INTEREST OF S.L.N.G., A CHILD

**From the 378th District Court
Ellis County, Texas
Trial Court No. 89843D**

## MEMORANDUM OPINION

Dillon G. appeals from a judgment that terminated his parent-child relationship with his child, S.L.N.G., after a trial before the court. TEX. FAM. CODE ANN. § 161.001(b) (West 2014). Dillon complains that the evidence was legally and factually insufficient for the trial court to have found that he committed any of the five predicate acts listed in the judgment of termination and that the termination of his parental rights was in the best interest of the child. Because we find that the evidence was legally and factually sufficient, we affirm the judgment of the trial court.

### STANDARD OF REVIEW

In order to terminate the parent-child relationship, there must be clear and

convincing evidence that the parent committed one or more of the acts specifically set forth in Family Code section 161.001(b)(1) and that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1), (2), .206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. Due process demands this heightened standard because of the fundamental interests at issue. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

Pursuant to Dillon's request, the trial court entered findings of fact and conclusions of law. TEX. R. CIV. P. 296. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

In evaluating the legal sufficiency of the evidence in a case involving termination of parental rights, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was established. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (*citing In re J.F.C.*, 96 S.W.3d at 264-66). We review all the evidence in the light most favorable to the finding and judgment. *Id*. We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so and disregard all evidence that a reasonable factfinder

could have disbelieved. *Id*. However, we must consider undisputed evidence even if it is contrary to the finding. *Id*. That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id*.

In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We are required to consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

In assessing the sufficiency of the evidence under the foregoing standards, we cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's exclusive province. Instead, we defer to the factfinder's credibility determinations as long as they are not unreasonable. *In re J.P.B.*, 180 S.W.3d at 573-74.

In this case, the trial court found clear and convincing evidence that Dillon (1) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months, a

violation of section 161.001(b)(1)(C) of the Texas Family Code; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, a violation of section 161.001(b)(1)(E); (3) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition, a violation of section 161.001(b)(1)(F); (4) used a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of the child and failed to complete court-ordered substance abuse treatment programs on two (2) separate occasions, a violation of section 161.001(b)(1)(P); and (5) knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition, a violation of section 161.001(b)(1)(Q). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C), (D), (F), (P), & (Q). The trial court also found that termination of the parent-child relationship was in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2).

Only one ground under section 161.001(b)(1) is necessary to support a judgment in a parental-rights termination case. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, when termination is based on multiple grounds under section 161.001(b)(1), as in this proceeding, we must affirm the termination order if the evidence is sufficient to support any one of the grounds found by the trial court and the best-interest finding. *Id*.

## SECTION 161.001(B)(1)(E)

In his first issue, Dillon complains that the evidence was legally and factually insufficient for the trial court to have found that he committed any of the five grounds that the trial court found that Dillon had committed pursuant to section 161.001(b)(1). Subsection (E) of section 161.001(b)(1) requires proof of endangerment, which means exposing a child to loss or injury or jeopardizing a child's emotional or physical health. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). With respect to subsection (E), the endangerment must be the direct result of the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied). Although an endangerment finding requires more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury; rather, it is sufficient if the conduct endangers the emotional well-being of the child. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *Boyd*, 727 S.W.2d at 533.

"Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E)." *Walker v. Tex. Dep't Fam. & Prot. Servs.*, 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (*citing Vasquez v. Tex. Dep't Prot. & Reg. Servs.*, 190 S.W.3d 189,

195-96 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (terminating parental rights despite there being no direct evidence of parent's continued drug use actually injuring child)). A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child. *In re F.A.R.*, No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, 2005 WL 181719, at *4 (Tex. App.— Eastland Jan. 13, 2005, no pet.) (mem. op.).

Additionally, domestic violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). As a general principle, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

### FACTS RELATING TO ENDANGERMENT

The facts relevant to section 161.001(b)(E) as found by the trial court in its findings of fact are: the child, S.L.N.G., was born on March 14, 2012. At that time, Kelly and Dillon were residing together but were never married. Kelly's mother was staying with Kelly and Dillon to assist with caring for S.L.N.G. One night when S.L.N.G. was approximately two months old, Dillon and Kelly got into an argument and Dillon told Kelly to leave with S.L.N.G. and her mother. During the course of that argument, Dillon pushed Kelly into a wall while she was holding S.L.N.G. Kelly, her mother, and S.L.N.G. left in the middle of the night and went to Kelly's mother's home.

When S.L.N.G. was born, Dillon was consuming a 30-pack of beer a week. Dillon had a history of drug use both prior to the birth of S.L.N.G. and after Kelly moved out with S.L.N.G. Dillon testified that he drank beer as a substitute for drugs and because he liked the taste of it. Dillon also stated that he used marijuana because he liked the taste of it as well.

During the time that Dillon and Kelly resided together after the birth of S.L.N.G., one night while Dillon was intoxicated, Dillon woke the baby in the middle of the night and attempted to feed the baby a bottle with scalding hot milk. Other than that one occasion, Dillon did not assist with the care of S.L.N.G. and wanted there to be no disturbance or interruption by the baby at their residence.

After Kelly left the residence in May of 2012, Dillon last saw S.L.N.G. when she was approximately two months old. Dillon was involved in a motorcycle accident in September of 2012 which made it impossible for him to work. After the accident, Dillon began using marijuana again on a daily basis and continued drinking alcohol.

Dillon had been placed on deferred adjudication community supervision for possession of a controlled substance in 2007 and was required to attend an inpatient drug treatment as a condition of his community supervision. Dillon did not complete the treatment and was discharged in 2009 due to aggressive behavior that resulted in physical conflict. Dillon's community supervision was modified and he was sent to the Substance Abuse Felony Punishment Facility (SAFPF) for drug treatment in 2010 where he was also

unsuccessfully discharged because of fighting with a peer. Dillon was arrested in March of 2013 for evading arrest and possession of marijuana. Dillon had also failed to report to his community supervision officer in April of 2013. Dillon's community supervision was revoked and he was sentenced to six years in prison on the 2007 possession charge and three years in prison for the evading arrest offense.

Dillon admitted to his drug use but denied that the incident where he was accused of pushing Kelly while she was holding S.L.N.G. occurred. Dillon further contended that his drug use did not affect S.L.N.G. because she was not around it.

The trial court made an additional finding of fact that after considering all of the evidence that the trial court did not find the evidence that was contrary to its findings of fact to be credible.

In his brief to this Court, Dillon argues that the evidence surrounding his drug use did not establish that he used the drugs in a manner that endangered the child. We disagree. While Dillon's drug use may not have taken place in S.L.N.G.'s presence, his use of drugs led in part to his incarceration and absence from S.L.N.G.'s life. Dillon's additional criminal acts while he was on community supervision also led to his incarceration. After he told Kelly to leave with S.L.N.G., Dillon made no attempts to seek legal counsel or to establish his parental rights.

Further, the trial court's findings establish that it found Kelly's testimony regarding the pushing incident to be credible despite Dillon's attempts to impeach her.

Dillon's intoxication led to the altercation, after which Dillon told Kelly to take S.L.N.G. and leave. Kelly testified that she would not leave S.L.N.G. alone with Dillon because of his regular alcohol and drug use prior to their separation. Using the appropriate standards, we find that the evidence was legally and factually sufficient to support the trial court's findings of fact relating to the determination that Dillon had engaged in conduct that endangered the child's physical or emotional well-being. Because we have found the evidence legally and factually sufficient as to one predicate act pursuant to section 161.001(b)(1), we overrule issue one.

## BEST INTEREST

In his second issue, Dillon complains that the evidence was legally and factually insufficient for the trial court to have found that the termination of the parent-child relationship was in the best interest of S.L.N.G. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors

that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

The same evidence proving acts or omissions under section 161.001(1) of the Texas Family Code has been held to be probative of best interest of the child. *In the Interest of C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Additionally, evidence of past misconduct can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re A.M.*, 385 S.W.3d 74, 82-83 (Tex. App.—Waco 2012, pet. denied) (concluding that evidence of mother's history of neglecting and endangering children by exposing them to domestic violence supported trial court's finding that termination was in child's best interest). Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *In re T.C.*, No. 10-10-00207-CV, 2010 Tex. App. LEXIS 9685, 2010 WL 4983512, at *8 (Tex. App.—Waco Dec. 1, 2010, pet. denied) (mem. op.); *Smith v. Tex. Dep't Prot. & Reg. Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

Dillon presented evidence that he was due to be released on mandatory supervision in March of 2016, and his intent was to move in with his grandparents. Dillon contended that he had a job available upon his release. Dillon had taken courses and sought counseling while he was in prison regarding his parenting skills. Dillon's family was supportive of his efforts to establish a relationship with S.L.N.G., even though Dillon recognized that he had no relationship with S.L.N.G. at the time of the final hearing. Dillon and his family blamed Kelly for the lack of relationship between Dillon and Kelly. Dillon contended that he had given Kelly approximately $400-500 dollars between the time of their separation in 2012 and his accident in September of that year. Kelly disputed that Dillon had given her any support other than giving her a money order that he took away from her as soon as he gave it to her. Dillon admitted that he had provided no support after that time, primarily due to his incarceration.

Kelly presented evidence that S.L.N.G. was residing with her at her mother's home and was doing well in her care. The attorney appointed to represent the child agreed that S.L.N.G. was doing well and that Kelly was meeting all of S.L.N.G.'s physical, emotional, and financial needs. Kelly had not used drugs since before S.L.N.G.'s birth. Kelly was going to college to become a nurse, had gotten her license as an EMT, and had a full-time job. Kelly's mother was S.L.N.G.'s caregiver while Kelly was at work or school.

Kelly testified that Dillon had told her that he intended to duct tape and bungee cord S.L.N.G.'s car seat onto the back of his motorcycle if he were to pick S.L.N.G. up for

visits. Kelly testified that Dillon had also told her that if he got possession of S.L.N.G. that he would not return the child to Kelly. Further, after S.L.N.G.'s birth, Dillon wanted to put bubble wrap around the inside of the crib to avoid buying a monitor for the baby's room in order to save money. Other than the one occasion when Dillon was intoxicated and attempted to feed a bottle to S.L.N.G. that was overheated, Dillon had no involvement in the care of S.L.N.G.

There was no testimony presented by Dillon regarding what would happen if he were to be able to visit with S.L.N.G. or his intent to provide support for S.L.N.G. upon his release. Dillon's grandmother questioned whether or not he would be able to work at all because of the motorcycle accident in 2012 after his release from prison, whether in March of 2016 if he were released on mandatory supervision or at the end of his sentence in 2018.[1]

Viewing the evidence and the trial court's findings of fact in light of the *Holley* factors and the standards for our review of the legal and factual sufficiency of the evidence, we find that the evidence was legally and factually sufficient for the trial court to have found that the termination was in the best interest of S.L.N.G. We overrule issue two.

---

[1] In Dillon's reply brief filed with this Court, Dillon attached documents regarding his status as an offender. However, these attachments are not part of the appellate record and were not available to the trial court at the time it made its decision. Therefore, we will not consider the "Declaration of Mary-Olga Levitt," Exhibit A, or Exhibit B included in the "Reply Brief of Appellant."

**CONCLUSION**

Having found that the evidence was legally and factually sufficient, we affirm the

judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed May 12, 2016
[CV06]

