

**IN THE
TENTH COURT OF APPEALS**

————————

**No. 10-23-00364-CV**

**IN THE INTEREST OF E.J. AND R.J., CHILDREN**

————————

**From the County Court at Law
Hill County, Texas
Trial Court No. CV177-22CCL**

## MEMORANDUM OPINION

In two issues, the father of E.J. and R.J. (Father) appeals from the trial court's order terminating his parental rights.[1]  The trial court determined that Father had violated Family Code subsections 161.001(b)(1)(D), (E), and (N) and that termination was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b).  We will affirm.

### Background

E.J. and R.J. were residing with their mother (Mother) when both children, and two half-siblings not the subject of this appeal, were removed from Mother's care by the Department of Family and Protective Services (the Department) because of alleged

———————————————————

[1] The parental rights of E.J.'s and R.J.'s mother were also terminated, but she has not appealed.

neglect. On the day the children were removed, Mother was arrested for abandoning and endangering the children. *See generally* TEX. PENAL CODE ANN. § 22.041. On April 25, 2022, the day after removal, the Department then filed its original petition in the trial court, in which it sought immediate appointment as temporary sole managing conservator. The trial court appointed the Department temporary sole managing conservator, and the children were placed with family and then in foster care. Father's whereabouts were unknown when suit was filed by the Department, and he was served with citation by publication. Email contact with Father was eventually made by the Department in March 2023 when Father was informed that E.J. and R.J. were the subject of a "CPS" case and were in foster care. Father appeared and testified at the final hearing that resulted in the trial court terminating his parental rights to E.J. and R.J.

## Issue One

In his first issue, Father contends that the evidence is legally and factually insufficient to support the trial court's determination that he engaged in conduct that qualified for parental termination under subsections 161.001(b)(1)(D), (E), and (N).[2] To resolve this issue, we need only address subsection 161.001(b)(1)(E).

---

[2] Issue one in Father's brief is stated as follows: "The evidence is legally and factually insufficient to support the trial court's determination that [he] engaged in conduct that qualified for parental termination under Tex. Fam. C. § 161.002(b)(D), (E), & (N)." However, because the arguments asserted by Father in issue one all relate to proof of the predicate violations under subsections 161.001(b)(1)(D), (E), and (N) of the Family Code, we construe issue one as a complaint under said subsections. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N).

AUTHORITY

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 382 (Tex. App.—Waco 2020) (mem. op.), *aff'd*, 627 S.W.3d 304 (Tex. 2021). Proof of one element does not relieve the petitioner of the burden of proving the other. *J.F.-G.*, 612 S.W.3d at 382. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980).

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344–45 (Tex. 2009). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

If multiple predicate violations are found by the factfinder, we will affirm based on any one ground because only one ground is necessary for termination of parental rights. *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021). However, when a parent's rights are terminated under subsection (D) or (E), the appellate court must evaluate the sufficiency of the evidence to support either of those grounds even if there is sufficient evidence to support a separate ground. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). This is due to the implications for termination of a parent's rights to other children under subsection (M) when a parent's rights are terminated under (D) or (E). *Id.* at 234; *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(M).

Termination under subsection (E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Subsection (E) requires proof of endangerment, which means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). While "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*

When termination is based upon subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). Termination under subsection (E) must be

based on more than a single act or omission; "a voluntary, deliberate, and conscious course of conduct by the parent is required." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

DISCUSSION

At the final hearing, Father, the Department's conservatorship worker assigned to the matter, and Father's mother testified.

Father testified via video link from Colorado, where he was incarcerated after having his probation revoked because he "ran from the court" and violated the terms of his intensive treatment probation on two 2016 cases, one for "vehicular eluding" and another for "introduction of contraband." He admitted he had been "on the run" from his probation for about one year and four months before his July 2, 2023 arrest and had been incarcerated earlier in his probation for violations. He indicated he was arrested on six warrants out of multiple counties, the two probation cases and "some theft charges or something like that" that were dismissed after his arrest. Father could not explain why he identified himself by a false name to officers investigating the incident that led to his arrest on the six outstanding warrants. Even though Father's arrest was less than four months before the final hearing, he said he could not recall the officers taking into custody and destroying a pen with "drug residue." Father also could not recall that his children with his current wife, G.J. and L.J., were taken into custody and placed with his current wife's mother or that he had been allowed only supervised contact.

Father admitted additional criminal behavior indicating he had been convicted and incarcerated in Texas on two prior occasions for driving while intoxicated.

Father's testimony regarding his most recent encounter with Colorado child welfare authorities on July 2, 2023, included his admission that his current family had been living in hotels. He acknowledged that a report was made to Colorado child welfare authorities but said the report was false. He acknowledged they had been staying at a hotel next door to a Starbucks. While they were all in front of the Starbucks, he and his wife were on their phones trying to locate another hotel to stay in because the existing hotel's prices had increased. Father could not explain why L.J., a one-and-a-half-year-old, was not wearing a diaper and was soaked in urine. Father acknowledged that G.J.'s and L.J.'s skin was hot to the touch but denied allegations their skin was sunburned.

Father acknowledged a prior case with child welfare authorities in Colorado was opened after L.J. tested positive for methamphetamine or amphetamine when L.J. was born, but he attributed the positive test to his current wife's use of prescription ADHD medication. Regardless, Colorado authorities opened a case on them because of the positive test.

Father testified that his limited contact with E.J. and R.J. in 2018 was because he was on intensive probation and was not able to move or leave Colorado freely, so every couple of months, he would go to Texas to see Mother, E.J., and R.J. After one specific visit to Texas by Father in 2018, Mother called him and said she was leaving Father. Father indicated he was unable to locate Mother, E.J., and R.J. after Mother's phone call. Father's last time to see E.J. and R.J. was five years before the final hearing when he visited the children and Mother in Amarillo.

When Father was asked what he had done for E.J. and R.J. since they left Colorado, he replied, "I've worked on myself." Father then explained that he has "done 128 hours of treatment, several hours of one-on-one therapy with counseling, done inpatient treatment, outpatient residential treatment, worked the 12-step program. I've been in sober living. Oh, DUI/DWI education and therapy." Father went on and added that "since being incarcerated this time," he has read books on parenting, tried to take parenting classes, taken "Seven Habits for Highly-Effective People" classes, and been accepted into a sober-living facility upon his release where he plans on working a six-month program and getting into a physical fitness/martial arts program. Father acknowledged that upon his release he would not have a home for E.J. and R.J. if he was going to the sober-living facility. Father indicated there would be a home for E.J. and R.J. if he wanted to go straight from incarceration to a home, but he thought it might be wiser to go to sober living when released. Father indicated that E.J. and R.J. may have to stay in foster care short-term because he was incarcerated.

The conservatorship worker testified that when the Department's case was opened in April 2022, Father was not personally served, and the trial court ordered citation by publication. The record before us reflects that there was an unsuccessful attempt to personally serve Father at a location in Lubbock, along with an unsuccessful attempt to serve Father by certified mail in Denver, Colorado. The conservatorship worker indicated Father's email was provided to her by Father's attorney, and she was able to make contact with Father in March 2023. By email, the conservatorship worker informed Father that E.J. and R.J. had a "CPS" case and that the children were in foster care. Father

replied stating he was married, had two small children, and was residing in Colorado. Father also explained his lack of contact with E.J. and R.J. was because Mother had moved with the children, and he did not know their whereabouts. Father did not agree to drug testing in the case when requested by the conservatorship worker. The conservatorship worker lost contact with Father soon after the initial March contact, and Father did not contact anyone else in the Department and had no contact with the children. To the conservatorship worker's knowledge, Father had not provided any support for E.J. or R.J. since they were born, nor had he seen E.J. and R.J. in the five years before the final hearing.

With regard to the July 2, 2023 arrest of Father, the conservatorship worker testified that the encounter with law enforcement was caused by a report concerning the welfare of his two other children, G.J. and L.J., whom he and his current wife have together. The incident caused Colorado authorities to open a case on Father and his current wife, which resulted in removal of G.J. and L.J. and allowed for supervised contact only. Father's current wife was ultimately charged with child neglect.

The conservatorship worker testified Mother indicated Father used drugs and was a "bad person." The conservatorship worker added that she had concerns regarding Father's ongoing drug use. The conservatorship worker believed it was in the best interest of E.J. and R.J. that Father's rights be terminated.

Father contends that he had no actions or omission between 2018 and March 2023 that qualify for termination under subsection (E). Father relies on *Earvin v. Department of Family & Protective Services*, 229 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2007, no pet.),

to support this contention. In *Earvin*, the mother disappeared with the child, and their whereabouts were unknown to the father until the child was in the custody of the Department. *Id.* at 346. The First Court of Appeals in *Earvin* concluded that there was no evidence in the record to establish that the father knowingly endangered the child or knowingly allowed the child to be endangered under subsection 161.001(b)(1)(D) or (E). *Id.* The facts here, however, are distinguishable because of the evidence of Father's conduct that supports termination under subsection 161.001(b)(1)(E), which was not the case in *Earvin*.

Endangerment to a child may be inferred from parental misconduct, and the factfinder may consider conduct that occurred before and after the child's birth, inside and outside the child's presence, and before and after removal by the Department. *See J.O.A.*, 283 S.W.3d at 345; *Boyd*, 727 S.W.2d at 533. Additionally, a parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re J.S.S.*, 594 S.W.3d 493, 505 (Tex. App.—Waco 2019, pet. denied) (mem. op.) (plurality opinion). Neither a conviction nor imprisonment, standing alone, will constitute engaging in conduct that endangers the emotional or physical well-being of a child although both are appropriate to consider. *J.F.-G.*, 627 S.W.3d at 312–13; *M.R.J.M.*, 280 S.W.3d at 503. Imprisonment is a factor that the trial court may weigh when considering endangerment. *J.F.-G.*, 627 S.W.3d at 313. "[W]hen a parent is incarcerated, he or she is absent from the child's daily life and unable to provide support to the child, negatively

impacting the child's living environment and emotional well-being." *M.R.J.M.*, 280 S.W.3d at 503.

A parent's history of criminal activity, illegal drug use, and domestic violence are also among the types of actions or omissions that subject a child to a life of uncertainty and instability. *See E.M.*, 494 S.W.3d at 222 (domestic violence, illegal drug use, drug-related criminal activity); *see also J.O.A.*, 283 S.W.3d at 345 (use of illegal drugs); *In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) (criminal conduct); *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) (domestic violence).

Father asserted that prior to 2018, before Mother disappeared with the children, he had a relationship with E.J. and R.J. and provided support for them. However, Father acknowledged that he had not seen or provided support for E.J. and R.J. since 2018. The conservatorship worker testified she had no knowledge of Father providing any support for E.J. or R.J. since they were born. Father said he tried to "set up" child support a few times, specifically stating one time through a jail in which he was incarcerated and another time through a treatment court in which he participated. Father said he was unable to afford a private investigator to locate E.J. and R.J. after being told that he would have to hire one. The conservatorship worker testified, however, that Father did not request contact with E.J. and R.J. after he was informed that they were in foster care. Father also failed to provide support for E.J. and R.J. after he was informed they were in foster care.

The trial court could have found that Father exhibited a course of conduct that endangered E.J.'s and R.J.'s physical and emotional well-being because of Father's

criminal behavior that resulted in multiple criminal convictions and multiple periods of incarceration along with his absence from E.J.'s and R.J.'s daily life, his failure to provide financial support, his history of substance abuse, his refusing to submit to drug testing, his having a child welfare case opened in Colorado during the pendency of this case, his having a previous child welfare case in Colorado, his being "on the run" for over a year, and the negative impact of Father's incarceration upon E.J.'s and R.J.'s living environment and emotional well-being. The squalor the children were found living in could have been, in part, the result of Father's lack of financial support. Father additionally exhibited little emotional attachment to E.J. and R.J. because he had no contact with them for the five years preceding the final hearing. Considering all the evidence in the light most favorable to the trial court's finding and considering the evidence as a whole, we conclude the evidence is legally and factually sufficient to support the trial court's determination that Father violated subsection 161.001(b)(1)(E). Because we affirm the trial court's finding that Father violated subsection (E), we need not address Father's complaints that challenge the trial court's findings in relation to subsections (D) and (N). *See N.G.*, 577 S.W.3d at 232–33. We overrule Father's first issue.

### Issue Two

In his second issue, Father contends that the evidence is legally and factually insufficient to support the trial court's determination that termination of his parental rights was in the best interest of the children because the record contains evidence that is neutral or weighs against the best-interest finding and because the Department failed to

meet its burden of proving that termination of Father's rights was in the children's best interest.

AUTHORITY

In determining the best interest of a child, a number of factors have been consistently considered and were set out in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* This list is not exhaustive but simply indicates factors that have been or could be pertinent. *Id.* at 372. The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable, permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc). There is no requirement that all the factors be proved as a condition precedent to termination, and the absence of evidence regarding some factors does not preclude a factfinder from determining that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. Evidence establishing one of the predicate grounds under

subsection 161.001(b)(1) also may be relevant to determining the best interest of the child. *Id.* at 27–28.

DISCUSSION

The Department acknowledged that Father was not the offending parent in the case in which he found himself involved. The evidence also shows that Father was incarcerated on multiple occasions, including at the time of the final hearing. Father indicated that if awarded custody, E.J. and R.J. may have to remain in foster care temporarily because of his incarceration. Father testified that there would be a home for E.J. and R.J. if Father wanted to go straight from incarceration to a home, but he thought it might be wiser to go to a sober-living facility when released. Father also proposed that E.J. and R.J. be placed with Father's mother, K.W., a proposal that was opposed by the Department. K.W. was not given positive recommendations by her adult daughter and stepdaughter and had insufficient references, all of which could cause the trial court to seriously question the plans of Father and the stability of a potential home for E.J. and R.J.

Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV, 2007 WL 293023, at *5–6 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage). Evidence of Father's conduct or behavior included a history of homelessness and

living in hotels, removal of Father's other children, G.J. and L.J., from him and his current wife by Colorado child welfare authorities because of neglect, unstable employment, multiple probation violations, multiple criminal convictions in both Texas and Colorado, having outstanding warrants in several counties, being wanted on warrants for over a one-year time period, and his extended absence from E.J. and R.J. for more than five years. All these circumstances, along with the parental abilities of Father, could cause the trial court to seriously consider the possibility of future emotional and physical danger to E.J. and R.J.

There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, considering all the evidence in the light most favorable to the trial court's finding and considering the evidence as a whole, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in E.J.'s and R.J.'s best interest. Accordingly, we overrule Father's second issue.

## Conclusion

We affirm the trial court's final order of termination.

MATT JOHNSON
Justice

Before Chief Justice Gray,
  Justice Johnson, and
  Justice Smith
(Chief Justice Gray concurs.)
Affirmed
Opinion delivered and filed May 2, 2024
[CV06]

